## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ALROY  RICHARDS

_____

_____

Write the full name of each plaintiff.

-against-

1. CITY  OF  NEW  YORK  COMPTROLLER

2. NEW  YORK  CITY  LAW  DEPARTMENT

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**20** CV_____

(Include case number if one has been assigned)

**COMPLAINT** (Civil)

Do you want a jury trial?
☑ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑   **Federal Question**

☐   **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

Title 7 of CIVIL RIGHTS  ACT (1964) - Race, Nationality, 14th  AMENDMENT (EQUAL  PROTECTION CLAUSE, DUE
PROCESS, ADMINISTRATIVE  PROCESS), COLOR  OF STATE, 4th  AMENDMENT, 1st AMENDMENT, RETALIATIONS, WHISTLEBLOWER LEGISLATIONS, 42 U.S.C.

s/s 1983.

## B.   If you checked Diversity of Citizenship

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of

(Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| ALROY | D | RICHARDS |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 179 Elm Street | | |
|---|---|---|
| Street Address | | |

| Nassau, Valley Stream | N.Y. | 11580 |
|---|---|---|
| County, City | State | Zip Code |

| 347-779-3620 | alroyrichards7@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

## B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

CITY  OF  NEW  YORK
_____
First Name                         Last Name

COMPTROLLER
_____
Current Job Title (or other identifying information)

1 Centre Street, Room #1225
_____
Current Work Address (or other address where defendant may be served)

New  York, New  York          N.Y.          10007
_____
County, City                       State          Zip Code

Defendant 2:

NEW  YORK  CITY       LAW DEPARTMENT
_____
First Name                         Last Name

Corporation Counsels (For the N.Y.P.D.)
_____
Current Job Title (or other identifying information)

100 Church  Street
_____
Current Work Address (or other address where defendant may be served)

New  York,  New  York      N.Y.          10007
_____
County, City                       State          Zip Code

Defendant 3:

_____
First Name                         Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City                       State          Zip Code

Defendant 4:

| | |
|---|---|
| First Name | Last Name |

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

## III. STATEMENT OF CLAIM

Place(s) of occurrence: New York, N.Y., Brooklyn, N.Y., Queens, N,Y.

Date(s) of occurrence: 03/09/2018, 10/15/2018, 10/04/2019, 03/28/2018, 02/12/2018, etc.

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

Please see additional pages attached, in form of Motion document.

Matter commenced on 03/09/2018, when the Plaintiff was Physicaly Assaulted, by an

unrelated (to the N.Y.P.D.) civilian Manager, of then Plaintiff's Employer. Matter was

reported to the N.Y.P.D., 1st Precinct, at 16 Ericsson Place, New York, N.Y. Matter was
caught on at least two(2) C.C.T.V. cameras. N.Y.P.D. did nothing, despite Police Report

#2018-001-01679. Plaintiff followed up with the N.Y.P.D., with telephone calls, visits,

along with written correspondences. Matter reported to Civilian Complaints Review
Board (C.C.R.B. file #2018-02618) in April 2018. C.C.R.B. referred back matter to the
N.Y.P.D. Still, no actions, by the police. Plaintioff escalated matter to Precinct Command,
as well as to 1 Police Plaza, but no actions, by the police. Culminated into F.O.I.L.
request #2019-056-00497, on Plaintiff's insistence, but no actions, by the police. The
Plaintiff intimated, that based on the police's "actions", and inactions, it would have
appeared that retaliation, against Plaintiff, were in order, from the N.Y.P.D. Indeed.
Plaintiff realized that he was being illicitly profiled, and followed, by the N.Y.P.D., by use
of marked, and unmarked vehicles, and use of actual (police) human resources, and all
electronic means. Resulted in Plaintiff being targeted, and illegal 10/15/2018 traffic stop,

of the Plaintiff, in Brooklyn, N.Y. Ticket #ABB1666862, to Plaintiff, and concoctions, malice, and dangerous lies. Plaintiff made complaints to police's Internal Affairs Bureau (#2018-4661), immediately after, and presented irrefutable evidences, on Plaintiff's accord. No effective investigations, nor meaningful, positive actions, towards the Plaintiff, bu the police. Exoneration of Plaintiff, in (Traffic D.M.V.) Court, on 01/11/2019. Harassment, retaliations had continued, and continue, of Plaintiff, by the N.Y.P.D. Vicious and malicious intents were relayed to Plaintiff's Employers, and neighbors. These are as a result of complaints made against the police by the Plaintiff. A series of events took place, like inequittable "booting" (device #32114, and Qand towing of Plaintiff motorcar (06/16/2019), by the N.Y.P.D./police. In addition, ficticious, malicious, willful, cincoctions, later proven to be lies, of traffic infractions, on 03/28/2018, and 02/12/2018, being speeding, and redlight. These are just highlights. Culminating in suspension of Plaintiff's Driver's License, and a multitude of "unfair" and "unequal" traffic citations. "City", being NYC Comptroller's Office, the New York City Law Department, Department of Finance, were respectively apprised, by Plaintiff, at the appropriate times.

## INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

No Physical Injuries. However, GENERALIZED EMOTIONAL DISTRESS (presently

being counselled professionally, and Plaintiff has general "Loss of Functions", fear,

anxiety, depression, loss of human dignity). This is under garden variety, significant, and

egregious types, encompassing I.I.E.D., along with N.I.E.D., inter alia. Harassment,

retaliation, and illicit profiling severe, pervasive, increasing in intensity, etc.

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

Punitive Damages, and other awards, by the Court. TITLE 7 C.R.A. (1964) - $300,000.00,

NEGLIGENCE - $500,000.00, EMOTIONAL DISTRESS - $500,000.00, LIBEL -

$700,000.00, 42 U.S.C. s/s 1983 - $1,200,000.00, RETALIATION - $700,000.00,

HARASSMENT - $600,000.00, MALICIOUS PROSECUTION - $1,000,000.00, and

14th AMENDMENT - $1,400,000.00, or such other Relief, Court may find to be just.

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 04/16/2020 | | X | YEFIM RUBIS |
| --- | --- | --- | --- |
| Dated | | Plaintiff's Signature | NOTARY PUBLIC, State of New York |
| ALROY | D | RICHARDS | No. 01RU6720277 |
| First Name | Middle Initial | Last Name | Qualified in Rockland County |
| 179 Elm Street | | | Commission Expires Feb. 22, 2023 |
| Street Address | | | 4/18/2020 |
| Nassau, Valley Stream | N.Y. | 11580 | |
| County, City | State | Zip Code | |
| 347-779-3620 | alroyrichards7@gmail.com | | |
| Telephone Number | Email Address (if available) | | |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes   ☐ No

    If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

✓**UNITED  STATES  (Federal) DISTRICT  COURT**

**For  The**

✓ **Southern  District**  Of  New  York

**ALROY   RICHARDS**

_____

**Plaintiff**

vs.

**Civil  Action No.:**
**20CV**

**JURY  TRIAL:  Yes**
**(If applicable)**

**1.CITY  OF  NEW  YORK  COMPTROLLER**
**2.NEW  YORK  CITY  LAW  DEPARTMENT**
  **(For, and On Behalf Of, The New York Police Department, aka NYPD)**

_____

**Respondents - Defendants**

_____

**PLEASE TAKE NOTICE**, that, I, **_Alroy Richards_**, herein called the **Plaintiff,** wishes to bring to this honorable Court's attention, **_reckless, unrelenting acts_**, towards the Plaintiff, from the **_New York Police Department_**, herein called the **_N.Y.P.D._**, which is to be potentially represented by the **_New York City Law Department._** Due to security concerns, and concern for Plaintiff's safety, no information will be sent to the N.Y.P.D., but will instead be sent to the NYC Law Department, and that collectively, the N.Y.P.D., and the NYC Law Department, shall be called **_Respondents - Defendants #2_**. However, the Plaintiff will specifically use the term N.Y.P.D., at junctures, as well as insertion of term NYC Law Department, where applicable. Contrastingly, the **_New York City Comptroller's Office_** (to be called **_Comptroller's Office_**) are being enjoined, in this matter, as **_Respondents - Defendants #1_**, as the problems were previously reported the NYC Comptroller's Office, and aspects, also to the NYC Law Department.

These acts, by the N.Y.P.D., towards the Plaintiff, are not one off incidences, are **_deliberate_**, **_malicious_**, **_prejudicial_**, **_highly retaliatory_**, **_"wicked"_**, **_meant to cause_**

1

*harm*, to the Plaintiff, are *well coordinated*, and *well calculating*. Primarily, Plaintiff had made a series of complaints, in writing (a multitude), with respect to *racial profiling* of the Plaintiff, with less than stellar intentions, towards the Plaintiff. These are not only *human rights*, and *human dignity violations*, but are unprecedented, Constitutionally. The Plaintiff, will show this Court, that *Respondeat Superior* is at work, Vicarious Responsibilities, and Vicarious Liabilities, hence the joining of both the NYC Comptroller's Office, as well as the NYC Law Department. These acts of *intimidation*, apparent *"hostilities"*, acts of *Nativism*, have left the Plaintiff *in fear of his life, embarrassment, humiliation, scorn, disdain, isolation.* Under similar circumstances, this is too much that any one human being, under similar conditions, would have been able to bear, or to endure. As a consequence, the Plaintiff is litigating for: *Malicious Prosecution*, *Emotional Distress*, breaches of *Title 7 of the 1964 Civil Rights Act* (*C.R.A.*), *Libel*, *Retaliations*, and *Negligence*.

*"The true administration of justice, is the firmest pillar of good governance"*, is one of the mottos of the New York State Courts. Also, *"equal and exact justice, for all humans, regardless of state, persuasion, or origin"*.  Mantra of the police, is *"to serve, protect, and reassure"*. However, by all stretch of the imagination, and for unexplained reasons, the N.Y.P.D. have failed the Plaintiff. Plaintiff had filed a matter with the N.Y.P.D., on March 9, 2018, with respect to a **Physical Attack**, on the Plaintiff, by a Manager of the Plaintiff's (then) Employer. This matter took place at New York, N.Y. Plaintiff received a *Police Report #2018-001-01679*, citing Harassment, or Physical Assault (Physical Attack), by the attacker, a male Manager. Comptroller's Office #2019-PI024392. The suspect, was never arrested, even though the Plaintiff had physically pointed out the suspect, to the N.Y.P.D., on their arrival at the crime scene, after the Plaintiff telephoned the police. **1st Precinct** had responded. Incident (Physical Attack on Plaintiff) took place under fully functional, fully operation Closed Circuit Television cameras.

In the N.Y.P.D. Police Report (#2018-001-01679) the police indicated that they would be viewing the C.C.T.V. images, which were readily available, but never done so. Previously, and on the evening of the Physical Attack (on the Plaintiff), the N.Y.P.D., on insistence from the Plaintiff, asked the top Management of that company (that Plaintiff had worked for), to procure the images, for viewing; the affirmative were given, to the

2

N.Y.P.D., by that company's Management. Plaintiff then made <u>several visits</u> to the 1st Precinct of the N.Y.P.D., as a follow up, but nothing happened. <u>Several written communications</u>, by the Plaintiff, were also made to the 1st Precinct, as well as to 1 Police Plaza (NYC Police Headquarters), requesting appropriate updates; still nothing happened. At all times, the written correspondence, from the Plaintiff, were personally dropped off, by the Plaintiff, at the 1st Precinct location, at Ericsson Place, New York, N.Y. Therefore, Plaintiff resorted to telephone calls, to the N.Y.P.D., as still no actions from the N.Y.P.D.  Records of all these matters, have been formally retained, by the Plaintiff. The Commanding Officer of the 1st Precinct was written to, several times, by the Plaintiff, and so was the top brass of the N.Y.P.D., at 1 Police Plaza, namely Mr. Terrence Monahan, Chief of Department (wrote this top N.Y.P.D. personnel several times).

Upon realizing that no actions were being effected by the N.Y.P.D., the Plaintiff, in April 2018, formally reported the matter to the **Civilian Complaints Review Board** (**C.C.R.B.**), via written correspondences, and telephone calls, along with at least two (2) visits to the C.C.R.B. C.C.R.B. file **#** is ***2018-02618***.  Reports by Plaintiff, to the C.C.R.B., were done in June 2018. Unfortunately, the C.C.R.B. wrote to the Plaintiff, referring Plaintiff back to the N.Y.P.D. Further follow up were done with the N.Y.P.D., by the plaintiff, but nothing substantial took place. In January 2019, the Plaintiff, in following up, wrote to the Freedom of Information Law (F.O.I.L.) Unit of the N.Y.P.D., seeking disclosure, especially for requests to view the C.C.T.V. images (F.O.I.L. request ***#2019-056-00497***), being kept, by Plaintiff's (now) ex-Employer. Plaintiff was terminated, by that Employer, subsequent to the visit by the N.Y.PD., for calling the police, to the crime scene. The F.O.I.L. Unit of the N.Y.P.D. denied the Plaintiff the right to request follow up, in all aspects, in the case.

Due to the fact that the Plaintiff had made these series of complaints, based on the March 9, 2018 Physical Attack on him, by a (then) Manager of a company that the Plaintiff had worked for, the Plaintiff knew that, by all accounts, that the N.Y.P.D. could, or would retaliate against him; the police had actually followed through, on their "threats". Plaintiff realized that the **police began to follow him (Plaintiff), both in** **marked, as well as unmarked police vehicles. Personnel, suspected to be police** **personnel were following the Plaintiff, almost everywhere that Plaintiff goes.**

3

**Plaintiff's communications were also seen to be intercepted, and which included: emails, telephone calls, use of computers, whatsapp, etc. Further, all indications are that Plaintiff's telephone conversations were also being intercepted, and recorded, supposedly, by said "persons".** These matters were reported to the police, by the Plaintiff, but the N.Y.P.D. did nothing. **Persons, said to be identified as "police" have turned up at residences, in the areas that Plaintiff reside** (New York), **and at Plaintiff's places of employment,** inclusive of current one (started this job, in August 2018), **trying to discredit the Plaintiff**, and instituting *scorn*, *disdain*, *malice*, *ridicule*, *prejudice*, *hate*, against the Plaintiff, with "disparaging" comments.

These negative campaigns, against the Plaintiff,  became quite overwhelming, and unbearable, leading to severe Emotional Distress, and other ills. Actions by the police, are distinctly retaliatory, for the complaints made by the Plaintiff. Hence, Plaintiff is also filing under Title 7 of the C.R.A. (1964), and the *42 U.S.C. sub-section 1983*. Plaintiff had to be constantly living in fear, and in fear for his life. The matters did not end there. Outright, these are *abuses of power*, and *abuses of authority*, by the N.Y.P.D. Harassment would be practice of unjustly interfering with, or disturbing the Plaintiff, because of race, complaints made, color, nationality, having filed cases against the police, etc. *First Amendment* privileges, and rights, of the Plaintiff, are also being breached - freedom of expression, either political, social, artistic, or otherwise, have been infringed upon, by the N.Y.P.D. *Fourth Amendment* breaches are also made; racial profiling, and the violation of **Equal Protection** clause, of the *Fourteenth Amendment*.

Unto the other incident, involving Title 7 C.R.A. 1964, First, Fourth and Fourteenth Amendment violations, Hostilities, Libel, inter alia. On **October 15, 2018**, the Plaintiff was driving his motorcar, *JEB 5810*, in Brooklyn, on his way to work, close to **8:00 am**, or so. Location was *Foster Avenue* and *Coney Island Avenue*, *Brooklyn*, N.Y. Plaintiff was positioned in his motorcar, being the only occupant, at the four (4) way, by Coney Island Avenue, and Foster Avenue. Plaintiff's motorcar was at the front of the line of traffic, along Foster Avenue; stop lights being on red, whilst Plaintiff waited to take the left turn, and unto Coney Island Avenue, heading east, to general Coney Island area. Opposing traffic, on other side of Foster Avenue, had also stopped. There was a motor vehicle at the front of the line, seemingly heading in opposite direction, but facing traffic

4

from direction of the Plaintiff, Coney Island Avenue being the symmetry. Indicator on that vehicle, at front of line, in opposite direction, was intending on turning left, unto Coney Island Avenue, positioned to head westerly (opposite to direction of where Plaintiff intended to turn).

Plaintiff later discovered that a marked police vehicle (police truck), being **#4351** (**70th Precinct**), was positioned behind that opposing vehicle, across from Plaintiff's, on other side of the four (4) way, Coney Island Avenue being the symmetry. The stop lights changed to green, and the Plaintiff, unopposed, and unimpeded, and in his rightful judgement, proceeded to turn left. Opposing traffic on other side of Foster Avenue, was unable to proceed, as the vehicle at front positioned, to take the left turn, also unto Coney Island Avenue, in opposite direction, as Plaintiff. Plaintiff proceeded east, along Coney Island Avenue. Few seconds later, the Plaintiff heard police sirens, and realized that the police were behind him, in a marked police truck. There are three lanes, for each direction, on opposite sides. Direction Plaintiff was heading had three (3) lanes. The marked police truck, with two(2) white police personnel, pulled up, to the right of the Plaintiff's motor car. Plaintiff was in far left lane. Using a loud haler, the police then beckoned to the Plaintiff to pull over (to the left). The police then "cleared the way" (made provisions, by stopping traffic heading in same direction, to allow Plaintiff to pull to the left.

Plaintiff pulled over, and stopped a little distant above, or in front of they marked police vehicle. Plaintiff remained inside his motorcar, and was till the only occupant, in his motor car. Two (2) police Officers, in uniforms, were seen approaching the Plaintiff's motor car, from a direction behind that of the Plaintiff's. One was a male, and the other was female, and both were white (for description purposes). Each police approached on either side of the Plaintiff, whom was seated, at all times, in his motorcar. The male police Officer approached from Plaintiff's left, and the female police Officer, to the right of the Plaintiff. ***Both police Officers had their hands on their pistols; pistols being still inside gun holdsters***. Plaintiff was in complete fear, panicked, and even felt that the police would have done something drastic. Plaintiff proceeded to cordially, and respectfully greet both police Officers, and ***Plaintiff asked what was the reason for the traffic stop***.

5

No specific reasons were given to the Plaintiff, by the police Officers. The police then asked the Plaintiff for his car documents, inclusive of driver's license, which Plaintiff handed over to the police. Document's for the Plaintiff were appropriate, and in order. The Plaintiff then asked the police what was the reason for the "illicit" traffic stop. Surprisingly, the male police Officer began to get **quite *boisterous***, and **quite *angry***, based on the inquiries, by the Plaintiff. Plaintiff then asked the said male police Officer to please calm down, and be respectful. Both police Officers walked away, but before doing so, the police told the Plaintiff that Plaintiff **"failed to yield to traffic".** On police's return to their marked police truck, behind, ***Plaintiff remained seated, in his motor car, for not less than fifteen (15) minutes***. After those fifteen (15) minutes, the police team returned, with the Plaintiff's documents. ***Traffic Ticket #ABB1666862***, was issued, to the Plaintiff. Elements of racism, and profiling, were detected in the police's approach, thus far.

Apparently, this team was "following" the Plaintiff. Plaintiff even suspect that "illicit trackers" were put on his motorcar, and saw where, on at least two (2) occasions, ***"unknown persons" had "broken into" (illegally entered) the Plaintiff's motorcar, which was locked, overnight***. Searching of areas in main area of the motorcar, and in the trunk areas, were evident, during those illegal, and malicious entries, into Plaintiff's motorcar.

Plaintiff disagreed, which got the male police Officer angry, and whom now said that he would be issuing a Traffic Ticket, to the Plaintiff. **Plaintiff then asked the police what is the procedure**. The female police Officer insisted that the male police Officer calm down, and strongly suggested that she address Plaintiff, instead; she explained the "policies", and procedures, to the Plaintiff. The Traffic Ticket was issued to the Plaintiff, whom then drove away, and the police team went about their business.

Plaintiff then wrote a ***five (5) page letter/report***, dated October 18, 2018, to the 70th Precinct, detailing the incident, "what the Plaintiff believed was involved", and completely denying the police's allegations, and accusations, as being utterly false. Plaintiff had also ***attached photographs, of the scene***, in addition to a **detailed hand drawn map**, of the road way, and area, ***alluding to location of C.C.T.V. cameras, in the area***. This report from Plaintiff, and the attachments, were addressed to the

6

Commanding Officer, of the 70th Precinct, and was personally dropped off, by Plaintiff, at the 70th Precinct, Lawrence Avenue, Brooklyn. Copies were remitted to the Department of Motor Vehicles (D.M.V.), by the Plaintiff. A Court date of October 2019 (one year later) was set, through an online process. No actions were yet forthcoming, from the N.Y.P.D. Plaintiff then contacted the ***Internal Affairs Bureau*** (***I.A.B.***). a few weeks after the October 15, 2018 "suspicious" traffic stop.

Subsequently, the ***N.Y.P.D. Patrol Borough Brooklyn South Investigations Unit,*** responded with a **November 13, 2018 letter,** regarding the actions of the police, in the October 15, 2018 "illegal" traffic stop. Case **#2018-41661**. Intuitively, the police were primarily apologizing for the manner in which the matter may have been handled, by the police, at the material "stop" location, whilst almost still not assigning blame, to the police personnel concerned. Plaintiff kept in touch with the P.B.B.S. until February 2019. However, nothing else was heard of the matter, with all due respects. Again, Plaintiff kept records of the developments. Surprisingly, the **Plaintiff realized that a multitude of traffic tickets were either being mailed to my mailing address, or that "unusual", and unfair traffic tickets, were being placed on the windscreen of Plaintiff's motorcar**, which was acquired in late September 2018. In addition, the "pursuits" by the N.Y.P.D., in both marked, and unmarked cars, continued, in addition to "personnel" physically following up the Plaintiff.

These pursuits went as far as "unknown persons" following Plaintiff unto trains, or buses, and in unusual fashion, pointing or poking cellphones (process of recording) in the face of the Plaintiff. These are intimidatory actions, and were quite obvious to the persons in the vicinity, that "something was not right", and that Plaintiff is target of actions of these "individuals". Most of these commuters, on "realizing what is taking place", usually "scamper" for safety.

The N.Y.P.D. continued the ***bullying, retaliations, and intimidation, of the Plaintiff, and the intensities increased***. These were at place of residence (in and around abode), on the job (place of employment), places Plaintiff does business with (must have been tracking my cellphone signal, literally following me, and also tracking my bank card usages, and information). Returning to the traffic matters, and obvious targeting of the Plaintiff, by the N.Y.P.D. **There are times when the Plaintiff had to**

7

**park his car, exit, and join crowded areas, for persons otherwise to see, in the interest of the Plaintiff's safety**. This, as the police (the N.Y.P.D.) continued to follow the Plaintiff, on a 24 hours basis. Sometimes the plaintiff stopped his motorcar, or legally and safely switch directions, and this is when the "police personnel", would have "sped off", in their motor vehicles, but not that they stopped following the Plaintiff. Persons at places of employment, area where Plaintiff reside in, places of amusement, restaurants, other places done business with, would ask - *"Why are the police coming around, asking questions about you? Be careful. They are also suggesting that we (those persons) not allow you (Plaintiff) to be around here. Why"?*

On the issue of traffic tickets, issued to the Plaintiff: they were on the increase. The police (N.Y.P.D.), via their quasi entity, or auxiliary arm(s), are making "coordinated", and "co-operative" efforts, to ensure that the Plaintiff amass traffic tickets, illegally/illicitly, unfairly, biased, and prejudicial - being under directives of the police. These specofic matters, will be alluded to further, in this presentation. The Plaintiff decided to challenge these matters (issuing of traffic tickets), and started to justifiably draw inferences. **A few of these matters were thrown out by Administrative Law Judges**.

Returning to the October 15, 2018 matter, Plaintiff had made arrangements to attend on the Traffic Court, for traffic ticket #ABB1666862, the scheduled date being October 2019. In late September 2019, Plaintiff received correspondence in the mail, indicating that the case was put off, until October 2020 (a further one year). Plaintiff disagreed, and contacted the D.M.V., Brooklyn. Concerns for safety, relative to the N.Y.P.D., and its "stance taken", against the Plaintiff,  were relayed, to the Court, by the Plaintiff, based on the the developments. Consequently, the Plaintiff found out that the police had changed the Court date, without knowledge, or input, from  the Plaintiff. *Plaintiff wrote a series of Affidavits, to the Court,* explaining his need to have a trial in the matter, as scheduled, at the nearest date.

These Affidavits were ***August 14, 2019***, ***August 26, 2019***, and ***October 19, 2019***. Court was then set for November 1, 2019. Plaintiff was exonerated from the allegations, in Court. Court Receipt **#12LPJDISMS1911010010**. Thereafter, matter was filed by Plaintiff, with the ***NYC Comptroller's Office***, on October 8, 2019, being case

**#2019PI027086 - _Notice of Claim,_ with attachments**. Claim was disallowed (90 days Notice of Claim, expired as at January 14, 2019), due to Statute of Limitations (State wise), which Plaintiff wasnt cognizant of. Hence, Federal matter now being filed, by the Plaintiff. NYC Comptroller's letter, disallowing the Claim, to the Plaintiff, is dated October 15, 2019.

_Protection of the Civil Rights_ of the Plaintiff, were not being upheld, by the N.Y.P.D., as well as **_sanctity of person, home, and welfare_**. Incidences got more **_intense_**, and were **_repetitive_**, and **_not "one off" incidences. Conduct_** of the N.Y.P.D. are not only **_severe_**, and **_pervasive, that any reasonable person, would have considered to be: intimidatory, retaliatory, hostile, offensive_**, and **_abusive._** The Plaintiff will now outline a **_series of traffic tickets, issued by the police, or its quasi entity_**, under strict directives of the N.Y.P.D., inclusive of issuing of **_deliberate, malicious, and illegal traffic tickets/citations, for red light, and speeding violations_**. These include **_when Plaintiff did not own a personal motorcar, nor was Plaintiff driving, at that time_**.

| Ticket # | Date | Alleged Violation | Site ID | Result |
|---|---|---|---|---|
| Frame 075487A | 03/28/2018 | Speeding | KFS02P-WB | Withdrawn ? |
| | 3:01 pm | | | |
| 2449-008A | 02/12/2018 | Red Light | KQ | Withdrawn ? |
| ABB1666862 | 10/15/2018 | Failure to give to | | Exonerated |
| | | way, on turning | | in Court |

_10:35 pm_

The two (2) reported respective locations being: Linden Boulevard, and Rockaway Avenue intersection, Brooklyn, N.Y., and Eastern Parkway, and Bedford Park intersection, Brooklyn, N.Y. Incidences are said to have occurred in <u>Lanes #2</u> and <u>Lane #1</u>, respectively. **<u>Plaintiff did not own any such vehicles, nor registered any such vehicles, as are being stipulated, for these two (2) dates.</u>** No wonder these damaging allegations, were seemingly withdrawn, by the police, or the City of New York, upon my written protests, commencing January 19, 2019, attaching a mini spread sheet. **<u>Motorcar JEB 5810 was purchased, by the Plaintiff, on September 22, 2018</u>**, and **<u>temporary New Jersey registration plates, #213037R, was being used, by the Plaintiff, until October 21, 2018</u>**.

9

However, my maladies, unfortunate happenings, and sojourns with the police, did not end there. The police's "operations" geared at embarrassing Plaintiff, maligning Plaintiff, with hate, scorn, and vicious lies, intensified. Plaintiff will show that, <u>with the advent of the October 15, 2018 "encounter", "framing" of the Plaintiff, amongst other things, that the police (and its affiliated entities) were on a massive negative and "dangerous" campaign, aimed at "trying to silence" the Plaintiff, to intimidate the Plaintiff, and carry out severe retaliations, against the Plaintiff</u>. This include a Sunday <u>October 21, 2018</u> (***openly commenced***) targeting of Plaintiff's motorcar, and of Plaintiff's person, being tracked, by the police, using "illegal" technological methods.

In another instance, the Plaintiff's motor car was unequivocally, inequitably, and with prejudice, and hate, removed to the Brooklyn Navy Yard, for alleged "No Standing" claims.  This happened on June 11, 2019, along Flatbush Avenue, near Albermerle Road, in Brooklyn, close to 8:00 am. (ticket #145420882). As per usual, other motor vehicles were parked on both sides of the road way; yet, they were not towed. In checking in and around the (Flatbush) areas, on a daily basis, there are motor vehicles that are parked for weeks, and months, without permit, in "No Parking" zones. These are not towed, nor ticketed for violations. Most of these vehicles are "well known", and either appeared derelict, or are just parked, without Inspection Stickers, or without Registration Stickers, and "other distinct violations. Again, no "Special Parking Permits". However, they are not towed, but citation tickets not issued for violations. The Plaintiff have conducted a multitude of investigations, in these regards. Vast inconsistencies exist, making the police's conduct more than questionable, and more than deliberate, and malicious.

Principle of a ***Preponderance of Evidences***, reveal, by any means, that, it is more than likely, considering, that the agents of the City of New York, more so the N.Y.P.D., and its "affiliate bodies", caused, or is causing the Litigant's (Plaintiff's) damages. ***Plaintiff's Driver's License have been suspended.*** Prior to those adverse actions, by the City of New York, the Plaintiff has asked the City, for time to challenge "these fabrications", and inhumane, and human rights violations. Ironically, ***<u>no demerit points have been assigned to the Plaintiff's Driver's License</u>***.  Still, no opportunities have seemingly been afforded, to the Plaintiff, to challenge, or disprove aspects of these fabrications, and profiling, by the N.Y.P.D. No material facts have been disputed, as brought by the

Plaintiff. Consequently, the Plaintiff will be asking this honorable Court, for summary against the Respondents, so named. ***The police are also well aware that the Plaintiff is a current employee, of the City of New York, since August 2018***. Despite this, there are ongoing harassment, retaliation, and discrimination, by the N.Y.P.D., the City of New York being apprised prior, of these infractions. Cases are:

*Seed Company Limited vs. Westerman, 266, F. Supp 3d, 143 (District of Colombia Cir. Court, 2017). Weng vs. Pizzella, 1:15CV00504-BJR (U.S. District Court, District of Colombia, 2019). Jiminez vs. McAleenan, 17CV2731 - CRC (U.S. District Court, Mass., 2019), District #1, Pace Coast Distributors, Marine Engineers, Beneficial Association, AFL-CIO vs. Liberty Marine Corp., 1:17CV02173 (U.S. Court of Appeals, District of Colombia, Cir. Court, 2019).*

**_Exhaustion Requirements_**, were not met, by the Respondents, as in Rasheed vs. District of Colombia Public School, 16CV-00665 (CKK) - (District of Colombia, District Court).  Principles of Exhaustion Requirements, are: (a) should provide an opportunity for administrative investigations, pf the Plaintiff's allegations, against the entities, so named. (b) the responsible parties must afford the "charged" parties prompt notice, of those allegations. ((c) promotion of an informal resolution of the claims, or allegations, should have ensued. (d) ensuring the preservation of evidences, relative to the Plaintiff's reports. Failing this, the Plaintiff is now reasonably filing these subsequent charges, in this honorable Court, relating to the original allegations, as will be seen, especially in the attachments, or Exhibits. *Ndondji vs. Inter Park, Inc., 768 F. Supp. 2d, 263, 276 (U.S. District Court, District of Colombia, 2011),* plus *Ross vs. Georgetown University, 18CV0671 (ABJ) (U.S. District Court, District of Colombia, 2019).*

In order to be clear, the Plaintiff has not filed the matter with the N.Y.P.D., in the interests of his own security. The N.Y.P.D. was already made aware, of these developments, in a series of information disseminated. The NYC Comptroller's Office, and the NYC Law Departments, were specifically informed, formally, by submission of claims, by the Plaintiff. Charges received by one agency, in this instance, and in the manner presented, are deemed filed, or received, with another agency. The NYC Law Department will so apprise the N.Y.P.D., accordingly. *Epps vs. Potomac Electric Power Co., 389 F. Supp 3d, 53 (U.S. District Court, 2019), Payne vs. Department of Youth*

*Rehabilitation Services, 18CV00562 (CKK) (District Courts, District of Colombia, 2019),* and *Palacios vs. Medstar Health, Inc., 298, F. Supp. 3d, 87, 93-94 (U.S. District Court, District of Colombia, 2018).*

This claim being presented before this Court, will demonstrate that Federal Rule requirements are, or have been met, by the Plaintiff, containing sufficient factual matters, to make claims, for reliefs, and which are plausible, against the Respondents named, in this litigation. *Ashcroft vs. Iqbal, 129, 1937, 1949 (U.S. Supreme Court, 2009), Bell vs. Twombly, 550, 544, 570 (U.S. Supreme Court, 2007).* In so doing, the Plaintiff intends on satisfying pleading requirements, that the agents of the Respondents - Defendants, are liable for the series of misconduct, as alleged, by the Plaintiff. **Patterns, and practices**, of the N.Y.P.D., towards immigrant and non-white populations, relative to any type of "stop", by the police, and subsequent actions, by the police, have been documented. Specifically relative to the October 15, 2018 "illicit" traffic stop, and profiling, of the Plaintiff, by the N.Y.P.D.

There are overwhelming evidences, in favor of the Plaintiff. The **_Plaintiff is suggesting Conferencing, and Conciliation,_** with the "responsible" parties, named as Respondents - Defendants (NYC Comptroller's Office, and the NYC Law Department). *Mattivi vs. South African Marine Corp., 618, F. 2d, 163, 168 (U.S. Court of Appeals, Second Cir., 1980).* Complaints, by the material Plaintiff, now appearing before this honorable Court, did not end the harassment, intimidation, prejudice, profiling. The N.Y.P.D. had the power, authority, and responsibility, to end these biased, and violating actions, against the Plaintiff. Further, the City of New York, had even greater powers, having had knowledge of the matters, as reported by the Plaintiff, causing numerous negative actions. Additional cases are:

*Brady vs. Wal-mart Stores, Inc. 455 Supp. 2d, 157, 197 (Eastern District, NY, 2006). Osorio vs. Source Enterprises, Inc., WL683985, 5 (Southern District, 2007) - **job interview difficulties**.*
*Ramirez vs. NYC Off Track Betting Co., 963, 96-7673, WL 210001, 5 (Southern District, NY, 1996),* to *U.S. Court of Appeals (Second Cir., 1997) - **difficulties finding other higher paying jobs*** (done diving jobs, here in the United States, say May 2018 - August 2018).

12

Phillips vs. Bowen, 278, F. 3d, 103, 111-112 *(U.S. Court of Appeals, Second Cir., 2002).*

*Meacham vs. Knoll Atomic Power Laboratory, 381, F. 3d, 56, 78 (U.S. Court of Appeals, Second Circuit, 2004) -* **solely on testimony of Plaintiff.**

*Katt vs. City of New York, 151, F. Supp 2d, 313, 369 (Southern District, NY, 2001).*

*Broom vs. Biondi, 17 F. Supp 2d, 211 (Southern District, NY, 1997) -* **medical for Plaintiff, wasnt required, for mental anguish.**

*Patterson vs. Balsamico, 440 F. 3d, 104, 120 (U.S. Court of Appeals, Second Cir., 2006).*

*Fink vs. City of New York, 129, F. Supp., 2d, 511, 538 (Eastern District, NY, 2001) -* **retaliation.**

Plaintiff now refer to the ***2011 Communities United for Police Reforms*** (**C.P.R.**) campaign, from matter of *Floyd vs. City of New York, 08CV01034-SAS-HBP (U.S. District Court, Southern District, NY, 2013).* Relevant to case matter at hand. Floyd vs. City of New York, accountability were demanded, from the police, was the end result. It addressed (1) ***Constitutional abuses, by the police***, and (2) ***human rights abuses, by the police*** (N.Y.P.D.). In the end, Hon. Justice Ms. Shira A. Scheindlin, Ordered the following:

(i)  police (N.Y.P.D.) Officers, ***must, wear body cameras***, at all times.

(i)  appointment of an ***independent monitor,*** to oversee the practices, of the N.Y.P.D., to see if they reasonably fall within the sphere of "appropriate behavior" of good practices, and adhering to Laws.

(iii) initiation of ***joint remedial processes***, to solicit information, from impacted New Yorkers (like the Plaintiff).

The Plaintiff, in his many dispensations to the police (written correspondences), have asked about body cameras, which the police should have been wearing. Matter of Police Report #2018-001-01679, C.C.R.B. #2018-02618, for March 9, 2018 matter, and also Traffic Ticket #ABB1666862, for October 15, 2018, I.A.B. #2018-41661, and F.O.I.L. #2019-056-00497. No answers emerged from the N.Y.P.D. The "independent monitors", the C.C.R.B., and the I.A.B., were not appropriately engaged by the N.Y.P.D., despite Plaintiff's  written reports, and evidences, and seriousness of the

13

matters at hand. No joint remedial processes were enjoined, nor initiated, by those with the responsibility to do so.

Hon. Justice Ms. Shira A. Scheindlin, further opined: **_Fourth Amendment_ violations - _racial profiling_**; Hispanics, and blacks, routinely being stopped, by the N.Y.P.D. at most, without reasons. **_Violation_** of **_Equal Protection Clause_** (**_E.P.C._**) of the **_Fourteenth_ _Amendment_**, was also cited (opined) in the said Order. Matter at hand, is applicable to the Plaintiff, in lawsuit, now being brought, before this honorable Court. Additional reviews, from Floyd vs. City of New York, are:

- **_racially motivated_**.
- 4th Amendment: guarantees equal protection, of all citizens, under the Law.
- it is illegal to routinely stop innocent persons, in the streets, without any objective, or proven reasons, or, to reasonably have suspected the person, of "wrongdoing".

Floyd vs. City of New York, emerged from _Daniels, et al, vs. City of New York, 99CV01695 (Southern District, NY, 1999)_. Main principles in _Daniels, et al, vs. City of New York,_ were:

\* 1997-1998, 35,000 of 45,000 stop and frisk, did not result in any arrests.
\* there were 16 blacks stopped, for every arrest made.
\* N.Y.P.D. must maintain a **_written anti-racial profiling policy_**, that comply with U.S., and NYS Constitutions.
\* (N.Y.P.D.) **_police Officers, involved in stop and frisk, be audited_**, for Supervisors to determine whether, and to what extent, the act was due to reasonable suspicion, and whether it was being documented.
\* led to Floyd vs. City of New York.

According to the Yale Law Journal, at most, the police should avoid definitive intentions, to deny citizens of their rights. In matter before this Court, this is exactly the scenario, faced by the Plaintiff. Cases are: _Screws vs. U.S., 325, 91, 104 (U.S. Supreme Court, 1945). Monroe vs. Pape, 365, 167, 187 (U.S. Supreme Court, 1961). Monell vs. Department of Social Services, 436, 658 (U.S. Supreme Court, 1978)._ **_Police trespass_** took place in these cases, as with case before this Court, involving Plaintiff. Court held

14

that **_superiors of the N.Y.P.D., must also be held liable_**. S**_uperiors, invariably authorized, or ratified the unconstitutional acts, of the junior (N.Y.P.D.) police Officers_**, by way of failure of the municipality (City of New York) to act, according to the 14th Amendment. The *Second Circuit*, through T*urpin vs. Mailet, 579 F. 2d, 152, 164 (1978),* had put forward this legal pronouncement (Order). Better and more effective training were apparently lacking, in these cases, and which is applicable in scenarios before this Court, involving the Plaintiff.

Abuses by the N.Y.P.D., relative to the material Plaintiff, in this litigation, are:

(a) **_surveillance abuses_** (of the Plaintiff).
(b) **_abuse of legal powers_** (relative to the Plaintiff).
*(c) **racial profiling** (of the Plaintiff).*
(d) **_Malicious Prosecution_** (of the Plaintiff).
(e) "excessive force" (**_abuse of legal powers_**, including "illegal" traffic stop).

Also, under **_42 U.S.C., sub-section, 1983_**, the police, acting on behalf of the City of New York, committed the following breaches, towards the Plaintiff:

1)Respondents, through their agents, deprived decent (Plaintiff) of rights, secured by the Constitution of the United States, and NYS Laws.
2)that, such deprivation, were committed by persons, acting under **_"Color of State" Law_**.
3)these resulted from **defacto policies,** or **practices**, **custom**, or **tradition**, or **pattern** of official practice.

Subsequent actions, of the (N.Y.P.D.) police, towards the Plaintiff, in matter before this Court, are highly unreasonable. Liabilities thus, cannot be avoided, by the "Principals". Plaintiff, at all times, must be the beneficiary of police protection.

Further Assessment, based on research, it is being reported that: between 2003-2007, there was a 200% increase in "stops", by the N.Y.P.D. 88.0% reportedly did not lead to any material or verifiable, significant crimes. 85.0% stopped were blacks, or Hispanics, whilst only 10.0% were whites.

### Emotional Distress

The agents of the Respondents - Defendants, have caused the Plaintiff much harm, distress, mental anguish, and stress related problems. Hence, the Plaintiff is seeking **_generalized Emotional harm_**, wherein, the <u>maximum award</u>, under Title 7 of the C.R.A. (1964), is <u>$300,000.00</u>. Three main types of Emotional Distress are: (1) **_egregious_** (2) **_garden variety_**, and (c) **_significant_**. Respondents - Defendants have further caused the Plaintiff:

(i) hair loss

(ii) intestinal disturbances

(iii) changes in sleep patterns

(iv) loss of "significant functions"

Compensatory damages are also being sought, for: (a) reputational harm, (b) mental anguish, and (c) loss of enjoyment of life. "Blacklisting" and exposure to ridicule, harm, blocking career prospects, causing disdain, scorn, disparate treatment, and contempt, towards the Plaintiff.

**_Intentional Infliction of Emotional Distress_** (**_I.I.E.D._**) - The Respondents, and their agents, are responsible for these damages, being heaped on the Plaintiff. Cases are: _Santiago-Ramirez vs. Secretary of Defence, 984, F. 2d, 16, 20 (U.S. Court of Appeals, First Cir., 1993), Kohn vs. United States, 680, F. 2d, 922 (U.S. Court of Appeals, Second Cir., 1982). Sheehan vs. United States, 896, F. 2d, 1168, 1172 (U.S. Court of Appeals, Second Cir., 1990). Patterson vs. Basamico, 440, F. 3d, 104, 120 (U.S. Court of Appeals, Second Cir., 2006)._

### Title 7, C.R.A. (1964)

Title 7, of the Civil Rights Act (herein called the C.R.A.) of 1964 (race, nationality). Title 7 Claims are discrimination, based on race and color. Title 7 of C.R.A. advised, that it is unlawful to avenge, or to retaliate against a person, because a Complainant (Plaintiff) had filed, or took part in, a lawful discrimination complaint, whether verbally done, or in written form (complaint). There should be no "transfers", 'disciplining", demotions, or

16

terminations, inter alia, as a result, nor should any hostilities be shown, to the Complainant (Plaintiff). Reference to the many written complaints, by Plaintiff, as well as verbal complaint. It covers potential awards for Medical Damages (to be expounded on, in Emotional Distress segment), and Emotional Distress punitive damages. Title 7, C.R.A., 1964, has an award cap of $300,000.00., and covers national origin.

Title 7, C.R.A. (1964), has disparate impact claims attached. Under Protected Class, other than race. May not discriminate with regard to Terms, and Conditions of Employment, as stated in paragraph above. Disparate Impact Claim is said to be "unintentional", whilst Disparate Treatment is intentional. City of New York, have a mandate of enforcing Title 7 C.R.A. (1964). No adverse decisions, against the Plaintiff, should have ensued (due to incumbent being complaining party), based on stereotyping, or any other assumptions, in Protected Class.

Cases to be introduced, in this Motion document, under a direct heading (Title 7), though not limited to just these, are: *Torgerson vs. City of Rochester, 643 F. 3d, 1031 (Eight Cir., 2011).* Case does not authorize discrimination, solely based on just race. Then, *Nadesan vs. Citizens Financial Group, 673 F. Apprx. 47, 49 (Second Cir., 2016).* Basis for the discrimination were settled, by the relevant Court(s), in those matters.

### Race:

As stated previously, the Plaintiff reported, as in his many correspondences, the (N.Y.P.D.) police Officers, are fully aware of the nationality, and race, of the Plaintiff. Harassment, hostilities, as per reports, by Plaintiff . Vicarious Responsibility, and Vicarious Liability, are applicable here. Yet, the N.Y.P.D., and the City of New York, were only quick to take negative and unwarranted actions against the Plaintiff. *McConnell Douglas Corp. vs. Green, 411, 791 (U.S. Supreme Court, 1973).* *Texas Department of Community Affairs vs. Burdine, 450, 248, 252-253 (U.S. Supreme Court, 1981).* Hostile, abrasive, and "hateful" treatment of the Plaintiff, is predicated on his race, and nationality. Plaintiff alluded to this, in his October 18, 2018 letter to the Commanding Officer, of the 70th Precinct, based on the October 15, 2018 "illegal stop".

In the dispositions to the NYC Comptroller's Office, and the NYC Law Department, the Plaintiff had also made these pronouncements. Manner in which Plaintiff was handled, by the police, on October 15, 2018, is "tell tale", in addition to the many correspondences, emails, and visits, to police locations, due to these incidences, by the N.Y.P.D.

### *Nationality:*

Matter of citizenship, immigration status, and "alienage" discrimination, come into being - birthplace, culture, language, ancestry. Prohibited by 42 U.S.C. s/s 2000 e) (2) (a)(1), and 2000e-3(a). It is clear, that, Managers, Supervisors, Executives, employees, and all quasi-workers, of New York City (and otherwise) have a responsibility, to act responsible. Principal - Agent theorem. Those tasks with much higher responsibility (top Management, Human Resources, Operations) have Collective Responsibility, in ensuring that the overwhelming reports, by the Plaintiff, even from the early stages, were checked, followed on, and mitigating situations put in place. **Nativism** is also clearly at work, causing isolation, grief, scorn, ridicule, Emotional Distress, prejudice, disdain, of the Plaintiff.

Case laws are *Middlebrooks vs. Teva Pharmaceuticals U.S., Inc., Civil 17-412 (Eastern District, PA, 2019). Hashem vs. Hunterdon City, et al, 15CV08585 (U.S. District Crt., NJ, 2017).*

Both Race and National Origin Discrimination, have the following elements (No other employee, were treated in the same worse, derogatory, and discriminatory manner, as the Plaintiff):

- that Plaintiff is in a **Protected Class**.
- Plaintiff was adequately reporting on disparities, and discriminatory behavior, by the police personnel.
- that the Plaintiff was subjected to adverse actions, thereafter, as a result.
- circumstances, involving the Plaintiff, gave rise to inferences of discrimination i.e. the "timing".

18

of the adverse actions, which is, after Plaintiff started documenting, and reporting on critical incidences, which were not acted on, by the N.Y.P.D.

These order of actions provided, are in conjunction with well settled proclamations, or rules, in *McConnell Douglas Corp., vs. Green*. Holds true, if protected activity is usually followed by discriminatory treatment. *Aguirre vs. Chula Vista Sanitary Services, 542 F. 2d 779, 781 (9th Cir., 1976)*. In continuing on race, and nationality, the following cases are also crucial: *Bennum vs. Rutgers University, 941 F. 2d, 154, 173 (U.S. District Crt. NJ, , Cir., 1991). E.E.O.C. vs. Locals 14 and 15, Intern. U of Oper Eng., 438 Supp, 876, 881 (S.D., NY, 1972). Hochstadt vs. Worcester Foundation, 425 Supp. 318, 324 (D. Mass., First Cir., 1976). E.E.O.C. vs. Abercrombie and Fitch Stores, Inc., 135, 2028 (U.S. Supreme Court, 2015). Fisher vs. Vassar College, 114, 1332, 1344 (Second Cir., 1997). St. Mary's Honor Centre vs. Hicks, 509, 502 (U.S. Supreme Cir. 1993). Trans World Airlines, Inc. vs. Thurston, 49, 111, 121, 105, 613, 621-622, 83 L.Ed., 523 (U.S. Supreme Crt., 1985)*. Then, disparate treatment: *E.E.O.C. vs. Franklin Marshall College, 775, F. 2d, 110, 116 (Third Cir., 1985)*, and *Kunda vs. Muhlenberg College, 621 F. 2d, 532 (U.S. Court of Appeals, Third Cir., 1980)*.

## Whistle Blower Legislation (*1989*)

Anyone whom sees, and report wrong doing, whether it be an employee of a state, local, private, or federal entity, would be regarded as a "Whistle Blower". It occur when that Whistle Blower decided to report to the relevant authorities, any illegal actions witnessed, believed to be in operations, or is about to take place. There would have been some standard, by which this Whistle Blower, would be using, to determine whether actual "wrong doing" were taking place. All States in the United States of America, have Whistle Blower Protection Laws; they are also usually part of State Laws too. Regarding case before this Court, scenarios reported by the Plaintiff, are: public safety issues, breaches by employees, including by various levels of Supervisors, breaches by patrons, discrimination, intimidation, harassment, lack of appropriate investigations, to cover rights of individuals, in addition to the interests of the "City", to include that of the City employees, and members of the public.

Whistle Blower Legislations are found at 2302 (b), Chapter 12, of Title 5. Ambits for the Plaintiff, or Complainant, are that:

(i)  As per Law, that the Plaintiff was engaging in "Protected activities". This is the case with this Plaintiff, and the current case, before this Court.
(ii) that the Principals, of the City of New York, knew about, and had knowledge of the correct matters, which were being reported, by the material Plaintiff. Plaintiff had repeatedly wrote about the issues.
(iii)Agents of the City of New York, took a series of direct, malicious, deliberate adverse actions, against the Plaintiff, for reporting on matters, he thought needed to have been investigated, corrected, and mitigation put in place.

Having been informed, had accurate, and direct knowledge of the matters being reported by the Plaintiff, agents of the City of New York, should have done the following:

(a) immediately assign Investigators.
(b) the Complaints from the Plaintiff, should have been assessed, and more effective responses be made.
(c) better Position Statements should have arisen, from the City of New York, given the scenarios
(d) Possible Hearings should have been kept, with possibility for Discoveries, clarifications, and the way forward.

Cases are: *Littleton vs. Bastrop County, D-1-GN-07-00987 (Travis County District Court, Third Judicial District, Texas, 2008). U.S. vs. Wells Fargo Bank, N.A., 972 F. Supp 2d 593 (Southern District, NY, 2013). Tiesinga vs. Dianon Systems, Inc., 3:02CV-01573 (District Court, Conn, 2007). Blakeslee vs. Shaw Environment, and Infrastructure Corp., 2009 CV00214 (U.S. District Court, Alaska, 2011).*

Hence, as a result of witnessing illegal activities, violation of public policies, threats to Laws, violations of policies, and "dangerous activities", the Plaintiff, decided to do the right thing, by reporting such activities, much to the chagrin of some agents of the City of New York. These violations were brought to "senior Management", by the Plaintiff.

20

Retaliations, hostilities, and discrimination against the Plaintiff, were the subsequent results. No protection of the Plaintiff, by agents, and policies of NYC ("the City") ensued. Pain and suffering were, and are being felt by the Plaintiff. As a consequence, the Plaintiff is seeking punitive damages. General psychological strain have emanated, along with financial strain, from being "blacklisted", by the City of New York, from applying for higher positions, and from adequately enjoying *"the American dream"*.

## Harassment

This is the practice of unjustifiably interfering with, or disturbing, the Plaintiff, because of his race, color, nationality, being a Whistle Blower, for making complaints, or for reporting discrimination. Plaintiff is also being harassed by the police (N.Y.P.D.), due exercise of his *First* (*1st*) *Amendment* rights: freedom of expression, either political, social, or cultural, infringements. The harassment being alluded to, are repetitive, and get more intense. Plaintiff had been shown *indignity,* has been *embarrassed*, *"framed"*, *suffered losses*, *loss of functions*, *prejudiced*, and has been *shown malice*, as a result of the police's mistreatment, and lack of actions fro the City. In its investigations, the City would have realized that the Plaintiff is indeed an employee of the City of New York. The police, in its "illicit" profiling, of the Plaintiff, would have already realized that information.

Cases to be introduced, are: *Landmark Burlington Industries, Inc., vs, Ellerth, 524, 742, 118, 2257, 141 L. Ed. 2d 633 (U.S. Supreme Court, 1998). Faragher vs. City of Boca Raton, 524, 775 (U.S. Supreme Court, 1998).* Court ruled that:

(i) Supervisors, Managers, are liable, on behalf of the "City", if they create hostilities, or harassment, towards the Plaintiff. Applicable to case of Plaintiff in matter now before the Court.  The City, and its "agents", had all the information, after  investigations.

(ii) Consequently, the "City", as stated by Courts, and case Laws, are subjected to Vicarious Responsibility or Vicarious Liability. *Jansen vs. Packaging Group of America, 123 F. 3d, 490 (Seventh Cir., 1996), 522, 1086 (1998).*

In furtherance of the points, made by Plaintiff, on Hostilities, and Harassment, Plaintiff also quote the following premises:

(a) Plaintiff was subjected to constant, and pervasive intimidation.

(b) conduct was based on Plaintiff's Protected status.

(c) "conduct" towards the Plaintiff, by the agents of City of New York, was sufficiently severe, and pervasive, altering, or under mining, the same principles of diversity, non-discrimination, inclusiveness, and equality (equal opportunity). for a reasonable person, under similar circumstances, to endure.

(d) at time, and as a result of such occurrence, Plaintiff perceives said environment, to be abusive, towards the Plaintiff.

*Brooks vs.City of San Mateo, 229, F. 3d 917, 923 (Nineth Cir., 2000). Harris vs. Fork Lift Systems, Inc., 510, 17 (U.S. Court of Appeals, Sixth Cir., 1993). Clark County School District vs. Breeden, 532, 268, 270 (U.S. Court of Appeals, Nineth Cir., 2001). Kortan vs. California Youth Authority, 217, F. 3d, 1104, 1110-1111 (U.S. Court of Appeals, Nineth Cir., 2000). Steele vs. Offshore Shipbuilding, Inc., 867, F. 2d, 1311, 1316 (U.S. Court of Appeals, Eleventh Cir., 1989), and E.E.O.C. vs Hacienda Hotel, 881, F. 2d 1504, 1515-1516 (U.S. Court of Appeals, Nineth Circuit, 1989), Ellison vs. Brady, 924, F. 2d, 872, 882 (U.S. Court of Appeals, Nineth Cir., 1991), Katz vs. Dole, 709, F. 2d, 251, 256 (U.S. Court of Appeals, Fourth Cir., 1987).*

## Negligence

In Law, negligence is the ***failure to use reasonable care, towards another, resulting in damages, or injury, to another (person, or persons).*** These principles in NYS common law claims, exist, where Plaintiff is entitled to **Punitive Damages**, under NYC Human Rights Law. "Negligent" party or parties' actions, amounted to willful, or wanton negligence, or, "recklessness". Or, being involved in the "conscious disregard", of the rights of others, or, conduct so reckless, as to amount to such disregard.

*Chauca vs. Abraham, NY Slip Op 08158 (U.S. District Court, NY, 2017).* In 2001, the Second Circuit, held that the Title 7 standard, also applied to NYCHRL claims, for Punitive Damages. The NYS Court of Appeals, cited its 1990 decision, in *Home Insurance Co. vs. American Home Products Corp., et al, 655 F. Supp., 193 (Southern District Court, NY, 2017).* The Court defined Punitive Damages, as **"conduct having a**

22

*high degree of moral culpability, which manifest a conscious disregard, for the*
*rights of others, or so reckless, as to amount to such disregard"*. No efforts were
spared, by the "Management" of the N.Y.P.D., nor (other) agents of the City of New
York, in rescuing the Plaintiff, from these abuses, by the police. The Exhibits to be
attached, by the Plaintiff, will give supporting evidences, in the claims, as being
presented, by the Plaintiff.

## Prayer for <u>Reliefs</u>:

**WHEREFORE**, Plaintiff request that this Court, and do pray, that these infringements,
by the N.Y.P.D., and, by the City of New York, will be seen, as presented, by the
Plaintiff, and the relief be so granted :

(a) Award Compensatory Damages, against the Respondents, jointly, and severally.
(b) Award Plaintiff Punitive Damages, as per:

| | | |
|---|---|---|
| **Title 7, C.R.A. (1964)** | - | **$300,000.00** |
| **Negligence** | - | **$500,000.00** |
| **Emotional Distress** | - | **$500,000.00** |
| **Libel** | - | **$700,000.00** |
| **42 U.S.C. s/s 1983** | - | **$1,200,000.00** |
| **Retaliation** | - | **$700,000.00** |
| **Harassment** | - | **$600,000.00** |
| **Malicious Prosecution** | - | **$1,000,000.00** |
| **14th Amendment (Equal Protection Clause, Due Process, Admin. Process)** | - | **$1,400,000.00** |
| | | ---------------------- |
| | | **$6,900,000.00** |
| | | ============ |

(c) such other, and further relief, as this Court deems just, and proper.

as per these, (i) police excesses, (ii) improper policy, (iii) mental and emotional distress
and (iv) general police misconduct, towards the Plaintiff.

23

* the City of New York, under its police Department, has a defacto quota policy, "encouraging" unlawful stops, by the N.Y.P.D.
* the City of New York, through its agents, at all times, were aware that the N.Y.P.D. were routinely committing Constitutional breaches, against the rights of the Plaintiff, such as those cited, by the Plaintiff, and that the "policies", practices, and customs, or stance, towards the Plaintiff, to stop the harassing behavior, has not changed.
* These policies, practice, and customs, are the moving forces, behind the Plaintiff's distresses, and other negative, and condescending dilemma, faced by Plaintiff.
* City of New York, via its agents, are aware that moral fortitude, in some N.Y.P.D. Officers, are on the decline, in the discharge of their duties, and in relation to the U.S. Constitution, and NYS practice Laws (cases), and is indifferent, to consequences.
* Incidences alluded to, by the Plaintiff, are not isolated, and have caused the Constitutional crises, towards the Plaintiff.
* the Respondents-Defendants, whom failed to intervene, violated the Plaintiff's 1st, 4th, and 14th Amendment breaches.
* As a direct result of these "unlawful" conduct, the N.Y.P.D., and other City agents, caused proximate damages, to the Plaintiff, herein alleged.
* Duty of the agents, whom had the power, and authority, to intervene, and had ample opportunities to openly correct such violations.
* ***Negligent Intentional Emotional Distress*** (***N.I.E.D.***) was unnecessary, and unwarranted, in performance of their duties.
* ***Respondeat Superior***, is applicable, in matter, brought forth, by the Plaintiff.
* Unlawful, malicious, and discriminatory stop, and "behavior" of the police, towards the Plaintiff, with the scope of their employment, have caused both N.I.E.D., and ***Intentional Infliction of Emotional Distress*** (***I.I.E.D.***).
* City of New York, via its agents (N.Y.P.D.), acted in deliberate , and discriminatory ways, to cause harm, to the Plaintiff.
* Upon reason, and belief, the N.Y.P.D., and the City of New York, should have known that, despite the several formal reports, made by the Plaintiff, the "behaviors" shown to the Plaintiff, are "illegal", and irresponsible, reasonably "dangerous", was more than unbecoming, was with prejudice, and discrimination, and without reasons.
* that the Plaintiff was being, and is still being illegally profiled, by the N.Y.P.D., and which was reported to the City of New York.
* the "City", as Respondents -Defendants, by way of the N.Y.P.D., owe a duty of care,

24

to **serve**, **protect**, and **reassure**, and to prevent the wrong conduct, and adequately address the incidences, based on the Plaintiff's reports.

* that the matters, as reported, by the Plaintiff, would be the same, under similar circumstances, by any reasonable person, resulting from the ongoing illegal conduct.

* N.Y.P.D., by its agents, also wrongfully "detained" the Plaintiff, on October 15, 2018.

* the City, via its agents, have caused <u>massive</u> "***injuries***", to **character**, **career**, and **reputation**, of the Plaintiff.

* by failing to act, the City of New York, has legitimized the heinous, and "wicked" actions, of the N.Y.P.D., towards the Plaintiff.

* False evidences, and false "testimonies" were presented against the Plaintiff, in the presentation of knowingly ficticious evidences, presented against the Plaintiff, and for violations against **Due Processes** (and 1st, 4th, and 5th Amendments).

* Commencement, and continuation of the prosecutoral proceedings, against the Plaintiff, are discriminatory, malicious, and without **Probable Cause**.

* As a direct, and proximate result of the unlawful actions, faced by the Plaintiff, the Plaintiff's sufferings have continued, leading to mental, and emotional distress, pain, and **mental anguish**, causing **humiliation**, **stereotyping**, **embarrassment**, and **loss of reputation**.

* violation of 42 U.S.C. s/s 1983, of Plaintiff's entitlements, to be ***free from harassment***, and from ***malicious prosecution***.

* Plaintiff's "injuries", and ***"confinement"***, were **not privileged**, <u>**neither did Plaintiff**</u> <u>**consent to these adverse actions**</u>.


There is another situation. where in March or so 2019, someone (suspected to be the police), got into my locked motorcar, whilst I spent 15 minutes away, purchasing food. These "unknown" persons stole my flash drive, from a knapsack, was on the floor area, of the front seat of the car. Nothing was damaged, neither was anything else stolen. A few months after, Plaintiff realized that unknown persons, without my permission, or knowledge, had placed the following information, on the internet : Plaintiff's **name, Social Security Number, signature, date of birth, all Plaintiff's Medical Records, address**. The information mentioned ("internet breach", and internet bullying) were composed in an over 300 page file, also contained on the flash drive, on multiple, but composed file (folder). On <u>**October 15, 2019**</u>, Plaintiff called the N.Y.P.D., at 1 Police

Plaza, and Cyber Crimes Unit. Subsequent to providing my name, no assistance were given, by the police.

On that day (10/15/2019), I attended on the **Federal Bureau of Investigations** (**F.B.I.**), at Federal Plaza, Manhattan, where Plaintiff completed forms, and submitted the information, to the F.B.I.  The F.B.I. directed Plaintiff back to the police, whom told Plaintiff to go to the nearest police Precinct. Plaintiff attended on the 5th Precinct, at Elizabeth Street, Manhattan, and gave the details, along with his (Plaintiff's) name. All seemed good, as the police checked. As soon as Plaintiff gave his name, to the police, and the police checked, all this changed. The police began, there, and then, to give the Plaintiff "attitudes", and declined to assist the Plaintiff, on mere account, of provision of Plaintiff's name. Again, the police were the suspects, based on the various "trackings", and underhanded behaviors, and hate, from the police, towards the Plaintiff, and "unauthorized" searches of my motor car (evident), entering without Plaintiff's knowledge, or permission, and not stealing anything, nor leaving any forms of damages.

In order to show the nexus of continuity, pervasiveness, intensity, and further declarations, that the actions, and inactions of the police (N.Y.P.D.), towards the Plaintiff, is not a "one off" incidence, the Plaintiff, now also point out a pending matter. This issue is now before the City of New York Comptroller's Office, since November 13, 2019, file **#2019PI031962**. It is **Police Report** #2018-070-006834, matter occuring on **October 4, 2019**. An adult male suspect, whom was apparently following the Plaintiff. Plaintiff was exiting Stop and Shop, when suspect targeted Plaintiff, tried "blocking", and attacking Plaintiff, within a period of almost three (3) minutes, almost in the same spot, within the facility. Plaintiff has never seen suspect prior, Plaintiff does not know the suspect, neither did Plaintiff have any issues, with anyone. Closed Circuit Television (C.C.T.V.) images are readily available, but still not viewed, by the N.Y.P.D. (to include the 70th Precinct).

Despite making several visits to the 70th Precinct, and having a Police Report, Plaintiff writing to the Commanding Officer, visited 1 Police Plaza, wrote to the Freedom of Information Law (F.OI.L.) Unit, the police has not acted. Further, the Plaintiff also telephoned the 70th Precinct thereafter, as well as 1 Police Plaza, but to no avail. Plaintiff is now living in fear, as the suspect is "still at large". The C.C.T.V. images were

not viewed by the police, neither have they done any investigations. Stop and Shop had insisted that the N.Y.P.D. write requesting the images, or to visit, in order to download the images, but the N.Y.P.d. has not done so. Primarily, this is as a result of previous complaints of police misconduct, of the N.Y.P.D., made by the Plaintiff, and further "scorn", and exposure of the Plaintiff to harm, made likely (and continuing to do so) by the N.Y.P.D.

A 50-H Hearing, emanated, in mid March 2020, as the Plaintiff had submitted a Notice of Claim, in that issue, along with Exhibits. Hearing, under General Municipal Law, was insisted by the Plaintiff. Awaiting further investigations, and results in that matter (2019PI031962).

Attached are **Exhibits** in the material matter, before the Court; these Exhibits numbering *1-50*.

            **WHEREFORE**, the Deponent prays that the Court process will review the facts presented by the Plaintiff, and requests presented, for the matter to be upheld in favor of the Plaintiff, and the requisite awards be made. Once the damages can be attempted, or shown to be improving, then the healing process will commence. Plaintiff does not wish to distort, mislead, or misinterpret any matter, nor to be disingenuous, and that the claims in narratives, are not frivolous, culminating in the award being claimed. Let us all endeavor in adhering to the concepts of non-discrimination, equal opportunity, diversity, and inclusiveness, inter alia.

Dated: 16th day of April 2020.

**Alroy Richards**
**Plaintiff**

Sworn to, before me, this _____ day of April 2020.

**Notary Public**

27

## VERIFICATION

**I, ALROY RICHARDS**, also known as the Plaintiff, being duly sworn, deposes, says:

That I have read the foregoing facts, and subsequent lawsuit, in presenting my matter, and that I know of the contents therein. The said are true, to my knowledge, free from folly, or frivolities, except as herein stated, to be alleged, on information, as to the matters, I believe them to be true. Also, to the best of my knowledge, and information, and belief, formed after an inquiry, reasonable under the circumstances, the presentation of these papers, or the contents therein, are not frivolous, as defined under sub-section C, of section 130-1.1, of the Rules of the Chief Administrator (22 NYCRR).

Dated: 16th day of April 2020
County of:

**Alroy Richards**
**Plaintiff**

Sworn to, before me, this ____ day of April 2020.

**Notary Public**

TO: - The Clerk of the Courts (Civil)
Federal Court, Southern District (N.Y.)
500 Pearl Street, Room #200
New York, N.Y. 10007
- City of New York Comptroller
Bureau of Law, and Tort Claims
1 Centre Street, Room #1225
New York, N.Y. 10007
- New York City Law Department (for the New York Police Department)
Corporation Counsel
100 Church Street
New York, N.Y. 10007

# FEDERAL  COURT

**STATE  OF  NEW  YORK**

**SOUTHERN  DISTRICT, NEW YORK**

**FILE NO.:**

**20CV_____**

**ALROY RICHARDS**

_____

**Plaintiff**

**Vs.**

**1.CITY  OF  NEW  YORK COMPTROLLER**

_____

**Respondent #1**

**2.NEW  YORK  CITY  LAW  DEPARTMENT (for the New York Law Department)**

_____

**Respondent #2**

| | |
|---|---|
| **Sign Name:** | _(signature)_ |
| **Print Name:** | **Alroy Richards** |
| **Address:** | **179 Elm Street** |
| | **Valley Stream, N.Y. 11580** |
| **Telephone:** | **347-779-3620** |

**Service of a copy, the within is herein admitted.**

**Dated:**        **16th day of April 2020.**

**Attorney For:**

29

**FEDERAL COURT, Southern District**
**NEW YORK STATE**

**ALROY RICHARDS vs. CITY OF NEW YORK COMPTROLLER**
                    **NEW YORK CITY LAW DEPARTMENT (for the N.Y.P.D.)**

**20CV_____**
                              ## EXHIBITS

1. Exoneration of the Plaintiff, in Court, Department of Motor Vehicles (D.M.V.), on 01/11/2019, with respect to Traffic Ticket #ABB1666862, for ficticious, concocted, malicious, and prejudicial actions, by the N.Y.P.D., regarding "illicit", and targeted" traffic stop, on 10/15/2018, in Brooklyn - 1 page.

2. Plaintiff's 10/25/20198 letter to the D.M.V. Court, for the upcoming 11/01/2019 Court, on ABB1666862 - 1 page.

3. Affidavit of the Plaintiff, dated 10/17/2019, submitted to the D.M.V. (Court), expressing fear, and retaliation, and profiling, by the police (N.Y.P.D.), of the Plaintiff, regarding the 10/15/2018 illegal traffic stop - 1 page.

4. D.M.V.'s (Court's) print out, regarding impending 01/11/2019 Court date, for the Plaintiff, moving Court date from 09/04/2020, relative to 10/15/2018 matter (ABB1666862) - 1 page.

5. Disallowing of Claim #2019PI027086, by the City of New York Comptroller's Office, in relation to 10/15/2018 matter (ABB1666862), inter alia, this correspondence dated 10/15/2019 - 1 page.

6. Acknowledgement of receipt of Claim #2019PI027086, from the Plaintiff, on 10/08/2019, again based on 10/15/2018 matter (ABB1666862), inter alia.

7. Notice of Claim, from Plaintiff, on 10/08/2019, to City of New York Comptroller's Office, with many Exhibits, inclusive of Exhibit list page - 14 pages.

8. Court's 09/23/2019, letter, to the Plaintiff, regarding prior unannounced rescheduling of Court date, from 10/08/2019, to 09/04/2020, alluding to the 10/15/2018 illegal traffic stop (ABB1666862) - 1 page.

9. Two (2) Affidavits, by the Plaintiff, submitted to the Court (D.M.V.), dated 08/26/2019, and 08/14/2019, regarding expressed fear, profiling, and retaliation, as a result of the actions of the police (N.Y.P.D.) - 3 pages, in total.

10. Letter dated 02/16/2019, by the Plaintiff, addressed to the police's (N.Y.P.D.'s) Patrol Borough of Brooklyn South (P.B.B.S.) Investigations Unit, in relation to the 10/15/2018 illicit and "targeted" traffic stop, of the Plaintiff - 1 page.

11. Letter dated 11/19/2018, by the Plaintiff, sent to the Internal Affairs Bureau (I.A.B.) of the N.Y.P.D., regarding ABB1666862 (10/15/2018 matter of illegal traffic stop) - 1 page.

12. P.B.B.S. Investigative Unit (N.Y.P.D.) letter, dated 11/13/2018, sent to the Plaintiff, relative to the 10/15/2018 illegal traffic stop (ABB1666862) - 1 page.

13. Email thread, from Plaintiff, dated 10/23/2018, addressed to the police's (N.Y.P.D.'s) I.A.B., asking that C.C.T.V. images of near by establishments, be obtained, and analysed (several requests made prior, by the Plaintiff), alluding to the 10/15/2018 traffic stop - 2 pages.

14. Comprehensive Report, from Plaintiff, dated 10/18/2018, attaching a 5 page report, detailed hand drawn map, and 8 photographs, all by the Plaintiff, along with a copy of ticket #ABB1666862, to the D.M.V., and said contents also sent to the connecting 70th police Precinct (Lawrence Avenue, Brooklyn) Commanding Officer, Deputy Inspector, Mr. James Palumbo, referring to the 10/15/2018 matter (ABB1666862) - 16 pages.

15. "Stop and Frisk" data, compiled by the NYS Legal Aide Society,, indicative of premeditated, biased, and prejudicial actions, towards especially blacks, and Hispanics, by the N.Y.P.D. - 1 page.

16. Some alleged traffic breaches, allegedly by the Plaintiff, giving dates, places, times, citation number, police Precinct, etc., including the 10/15/2018 illicit traffic stop (ABB1666862), and concocted, untrue, wicked, malicious, and ficticious traffic citations, on 03/28/2018 (speeding - 075487A), and 02/12/2018 (red light, 2449-008A) - 2 pages.

17. Ficticious traffic violations, said to be by Plaintiff, concocted by the police (N.Y.P.D.), and the City of New York, by extension, on 03/28/2018 (speeding - 075487A), and 02/12/2018 (red light, 2449-008A) - 2 pages.

18. Inequittable and "unequal" booting of Plaintiff's motor car, JEB 5810, on 07/16/2019, by the City's Marshals, on 21st Street, between Cortelyou and Beverley Roads, Brooklyn, N.Y., reportedly based on constantly disputed, and disputable "traffic citations", Plaintiff having previously written many correspondences. Violation Boot #Q92452, and Boot Device #32114 - 1 page document.

19. Plaintiff's 02/27/2019 report, or protests, regarding ticket #868549900-8, for alleged 02/15/2019 violation, being one (1) page report, copy of incumbent ticket, and 5 photographs - 7 pages.

20. Plaintiff's 02/24/2019 report, or protests, regarding ticket #145124690-0, for alleged 02/08/2019 citation, report being 2 pages, and copy of incumbent ticket - 3 pages.

21. 02/16/2019 report, or protests, by Plaintiff, regarding ticket #873165132-0, for alleged 02/13/2019 reported citation, report being 2 pages. Plaintiff has attached two (2) parking tickets paid for, copy of ticket cited (alleged violation), and copy of Queens Civil Court document, for attending Court there, on an unrelated matter, being Justice (Judge) Order, in that Queens Civil Court matter - 5 pages.

22. 02/14/2019 report, or protests, by Plaintiff, regarding ticket #871505993-5, report being 2 pages, copy of traffic ticket, along with 3 photographs - 6 pages.

23. 02/14/2019 report, by the Plaintiff, protesting the traffic ticket #871061690-1, copy of incumbent ticket, and 4 photographs - 7 pages.

24. Protests letter, with details, dated 01/15/2019, from Plaintiff, with a small or brief Spread Sheet, challenging traffic citations, and ficticious, malicious, and dangerous traffic citation, relative to non-existent 03/28/2018 speeding ("lie"), inter alia - 2 pages.

25. Disallowing of Claim #2019PI024392, from City of New York Comptroller's Office, dated 10/21/2019, regarding the 03/09/2018 Physical Assault, Menacing, and Harassment, of the Plaintiff, by an unrelated male civilian Manager, amongst other things. Nexus is police (N.Y.P.D.) Report #2018-001-01679, Civilian Complaints Review Board (C.C.R.B.) #2018-02618, and N.Y.P.D. Freedom of Information Law (F.O.I.L.) #2019-056-00497 - 1 page.

26. Letter by Plaintiff dated 10/14/2019, to City of New York's assigned Attorneys-at-Law, Daniel L. Schneider and Company, referring to scheduled 11/13/2019 50H Hearing, on matter of 03/09/2018, inter alia - 2 pages.

27. City Attorneys-at-Law Daniel L. Schneider and Company, dated 10/03/2019, relative to scheduled 50H Hearing, for 11/13/2019, based on Claim #2019PI024392, being in part, N.Y.P.D. Police Report #2018-001-01679 - 2 pages.

28. Letter dated 09/16/2019, by Plaintiff, to City of New York Comptroller, relative to Claim #2019PI024392 (Police Report #2018-001-01679), with 1 related appendix - 2 pages.

29. City of New York Comptroller's Office's 09/12/2019 letter, to the Plaintiff, acknowledging receipt of Plaintiff's Claim #2019PI024392, which is alluding, in part, to

the 03/09/2018 Physical Assault, Menacing, and Harassment, of the Plaintiff (Police Report #2018-001-01679) - 1 page.

30. Notice of Claim, by the Plaintiff, dated 09/09/2019, to the City of New York Comptroller's Office, on 09/09/2019, plus Affidavit In Support, and Exhibit page, listing ten (10) Exhibits, for Claim #2019PI024392 (03/09/2018 incident, against the Plaintiff) - 14 pages.

31. Letter dated 09/06/2019 letter to the City of New York Comptroller's Office, referring to Police Report #2018-001-01679 - 2 pages.

32. N.Y.P.D. Police Report #2018-001-01679, slightly revised, by the police (N.Y.P.D.), now dated 01/15/2019, subsequent to concerns, by the Plaintiff, in series of written correspondence, and meetings, in addition to phone calls, pointing to Police report #2018-001-01679, and the 03/09/2018 Physical Assault, Menacing and Harassment, of the Plaintiff - 3 pages.

33. N.Y.P.D.'s F.O.I.L. request #2019-056-0097, dated 01/15/2019, consequent to insistence, and follow up, by the Plaintiff, relative to N.Y.P.D.'s Police Report #2018-001-01679; 03/09/2018 incident, against the Plaintiff - 1 page.

34. Letter dated 11/19/2018, by the Plaintiff, to the N.Y.P.D.'s I.A.B., regarding Police Report #2018-001-01679, and C.C.R.B. #2018-02618, copy already being received by the police Departments, now being received, by the City of New York Comptroller's Office, on 10/01/2019 - 1 page.

35. Plaintiff's 06/11/2018 letter to Mr. Terrence Monahan, N.Y.P.D.s Chief of Department, with signature receipt, at 1 Police Plaza, and having also been received by Captain Angel L. Figueroa, Divisional Commander of the police's 1st Precinct. "Stamps" of acknowledgement, dated 06/11/2018, and 07/11/2018, in relation to 03/09/2018 incident, against the Plaintiff (Police Report #2018-001-01679) - 3 pages.

36. Plaintiff's 05/08/2018 Letter, to 1st Precinct's Sgt. Abraham Caraballo, re C.C.R.B.'s #2018-02618, and Police Report #2018-001-01679 - 2 pages.

Email thread, dated 05/07/2018, between Sgt. Abraham Caraballo, and the Plaintiff, based on said 03/09/2018 incident; Report #2018-001-01679 - 2 pages.

38. Letter dated 04/19/2018, from the Plaintiff, to N.Y.P.D.'s Mr. Terrence Monahan, Chief of Department, 1 Police Plaza, re #2018-02618, and thus 2018-001-01679 - 2 pages.

39. C.C.R.B.'s 04/05/2018 letter, to the Plaintiff, signalling end of their investigations, into Plaintiff's reports, surrounding #2018-02618, and the 03/09/2018 matter - 1 page.

33

40. Plaintiff's 03/24/2018 Letter, addressed to the Commanding Officer, of the 1st Precinct, at 16 Ericsson Place, Manhattan, regarding the 03/09/2018 initiating matter, as per reports, and investigations - 2 pages.

41. Initial N.Y.P.D. Police Report #2018-001-01679, three (3) pages, with "heavy" redaction, by the police, with respect to the 03/09/2018, Physical Assault, Menacing, and Harassment, of the Plaintiff, by a civilian Manager, of Plaintiff's (former) Employer, on 03/09/2018 - 3 pages.

42. Termination Letter, issued to Plaintiff, by Security Resources, connecting Employer (then), blaming Plaintiff, in no uncertain terms, and condemning Plaintiff, regarding the 03/09/2018 Physical Assault, Menacing and Harassment, of the Plaintiff, by one of their male Managers, Mr. Joseph Katanga - 1 page.

43. Letter dated 04/04/2020, by City of New York's Attorneys-at-Law, Daniel L. Schneider and Company, relative to Transcripts from a 03/17/2020 50H Hearing, for Plaintiff's Notice of Claim, 2019PI031962. Matter relates to a 10/04/2019 situation, where an "unknown male" , confronted, and attempted to attack the Plaintiff, at Stop and Shop, East Flatbush, Brooklyn, caught on C.C.T.V. Plaintiff reported the matter, and Police Report #2019-070-006834 was later issued to the Plaintiff. Despite Plaintiff's reports, viists, and telephone calls, on the scenario, the N.Y.P.D. have failed to act, to date - 1 page.

44. Letter dated 03/09/2020, by the Plaintiff, to Stop and Shop, inquiring about the status of the C.C.T.V. images, and whether the police attended on the location, to view the images, or to download the images - 1 page.

45. Plaintiff's Claim #2019PI031962, dated 12/03/2019, with 1 Appendix, relative to attempted Physical Attack, on the Plaintiff, on 10/04/2019, or N.Y.P.D. Report #2019-070-006834 - 2 pages.

46. NYC Comptroller's Letter to the Plaintiff, dated 11/29/2019, acknowledging receipt of Claim #2019PI031962, from the Plaintiff - 1 page.

47. Notice of Claim #2019PI031962, front cover, with receipt stamp, by the City of New York Comptroller's Office, matter being received on 11/26/2019, regarding the 10/04/2019 matter, of deliberate "targeting" of Plaintiff, by unknown adult male suspect - 1 page.

48. Letter from Plaintiff, dated 10/16/2019, addressed to N.Y.P.D.'s 70th Precinct Commanding Officer, Deputy Inspector Mr. David Wall, with "acknowledgement" of receipt of the letter, regarding Police Report #2019-070-006834.

49. N.Y.P.D.'s Police Report #2019-070-006834, with respect to the 10/04/2019 attempted attack, on the Plaintiff, in Brooklyn, at Stop and Shop.

50. NYC Department of Finance's (copy) "Check Refund", to the Plaintiff, in the amount of $60.00, dated 12/22/2018, for "unknown over payment", by the Plaintiff, in referring to payments on alleged outstanding traffic tickets, partially made by the Plaintiff, prior. No further specifications, on matter, was made by the City, despite Plaintiff's follow up, and inquiries - 1 page.

* Plaintiff previous report of possible retaliations, and harassment, by the N.Y.P.D., for reports made by the Plaintiff, about Police (N.Y.P.D.) Misconduct. Further, Plaintiff also reported "illicit" interception of Plaintiff's communications, by the police (N.Y.P.D.): email, telephone calls, text messages, whatsapp, computer and internet usages, by the Plaintiff. Plaintiff in his many endeavors (verbal, and written communications), reported that he is "being tracked", by the police (N.Y.P.D.), via electronic means (even on his motorcar - suspicions), along with (police/N.Y.P.D.) human resources.

04/16/2020

*Court*

MOTORIST COPY

**NEW YORK STATE | Department of Motor Vehicles**

**TRAFFIC VIOLATIONS DIVISION**
**BROOKLYN SOUTH**

*EXH. 1*

DATE: 11/01/2019

NAME: RICHARDS, ALROY, DINSTON

TIME: 01:10 PM

THE FOLLOWING TICKETS WERE DISMISSED
ABB1666862  FLD YLD ROW-LFT TURN

<u>RETAIN FOR YOUR RECORDS</u>

RECPT NUM: **12LPJDISMS1911010010**
OPERATOR: **BSALPJ**
TERMINAL: **VBSBS09**

AA-145 (1/19)hp                    PAGE **1** OF **1**

**179 Elm Street**
**Valley Stream, N.Y. 11580**
**Tele #347-779-3620**
**Email: alroyrichards7@gmail.com**

 EXH. 2

October 25, 2019

'WITHOUT PREJUDICE'

<u>HIGH PRIORITY</u>

Department of Motor Vehicles
Traffic Court (Ticket Dispute)
2875 West 8th Street, Coney Island
Brooklyn, N.Y. 11224

Dear Honorable Justice or the Clerk of the Courts:

RE:    **ALROY RICHARDS – TRAFFIC TICKET #ABB1666862**
**DISPUTE AS TO FACTS and BLATANT MISLEADING INFO, By The POLICE**
**Court Date For FRIDAY NOVEMBER 1, 2019 @1:15 PM**

Good day to you. The incumbent have made many visits to the Department of Motor Vehicles (material location), regarding the matter, in addition to many "explanations" about his safety, as a result, and duly completed Affidavits.

Please be advised, that **_I WILL BE PRESENT_**, in person, in Court, for the said Court date. As indicated in my previous Affidavits, it is imperative that the Police Officer(s) in question, turn up for the proceeding. The writer is imploring the police Officer(s), based concerns for his safety, inter alia, as well as the negative impact, and aspersions casted on him, subsequently.

In Good Faith, the police (N.Y.P.D.) has the burden of disproving what the complainant has reported, instead of having the matter be "drawn into oblivion", further compounding his security issues.

Most grateful. I pray that my requests will be acceded to, and that I may move on with the many other faucets, of my life. Please sign and return a copy of this letter to me, as an acknowledgement of receipt.

Yours sincerely

**ALROY D. RICHARDS**
**Complainant**

**Att.**

**Department of Motor Vehicles**
NEW YORK STATE

Office of Administrative Adjudication/
Traffic Violations Bureau

COPY

EXH. 3

Name: RICHARDS, Alroy

RE: Ticket No. ABB1666862
JEB 5810

I am the motorist described in the above ticket. I am charged with committing a traffic infraction, and I have pleaded "not guilty" to that charge.

My address is: 179 Elm Street
Valley Stream, N.Y. 11580

My date of birth is: 01/15/1972

I request that the Administrative Law Judge read and consider my statement, and make it part of the record before reaching a decision in my case. I waive my right to appear in person, to question witnesses, and/or to object to any evidence presented at the hearing. I understand that this Statement constitutes my appearance in this matter.

I understand that, in my absence, the Administrative Law Judge and the Department of Motor Vehicles may take any authorized legal action against me as if I were present at the hearing. Such actions include, but are not limited to, imposing fines, surcharges, and fees, and suspending or revoking my driver license or driving privilege, and/or registrations. I reserve the right to appeal any decision against me.

**You MUST explain why you believe you are "not guilty". You MUST enclose a copy of your driver license or government issued photo ID.** *(Attach additional sheets, if necessary, and copies of any evidence.)* COMPLAINANT hereby suggesting that, by all means Officer Saroff need to be present at the impending 11/01/2019 COURT DATE. Whether by SUBPOENA, or by contacting his superiors. Complainant's safety is critical. Please see copy Police Report # 2019-070-006834 attached, re unknown suspect and attempted attack. Police under F.O.I.L. refuse to further investigate, or to procure C.C.T.V. I went to ; Police Plaza and the F.B.I. yesterday. Copy report attached. Complainant stopped driving, out of fear and safety. few traffic tickets "thrown out" as complainant was either not in that place, nor had motorcar then, or comparatively high disparity existed - MAP. PHOTOS, STATEMENT.

**CERTIFICATION:** I certify, under penalty of perjury, that all information I have provided in this Statement and all supporting documents are true. I understand that making a false statement in connection with this Statement may subject me to criminal prosecution under the NYS Penal Law.

**SIGNED** ▶ _____
Motorist Signature

10 / 17 / 2019
Date

A4.53 (8/16)

COPY



DEPARTMENT OF MOTOR VEHICLES
TRAFFIC VIOLATIONS DIVISION
BKLYN S TVB

EXH. 4

DATE 10/07/19                                    TIME 1:37 PM

NAME: ALROY DINSTON RICHARDS
DOB/SEX: 01/11/72 M

YOU HAVE BEEN SCHEDULED TO APPEAR FOR THE FOLLOWING TICKET(S):

TICKET INFO      STATUS   ON DATE    AT TIME      AT LOCATION

ABB1666862                11/01/19   1:00 PM      BKLYN S TVB
10/15/18                                          2875 West 8th Street
FLD YLD ROW-LFT TURN                              Brooklyn, NY 11224

OPER   ADJLAD
TERM# BS42    N          PAGE    1 OF   1

         ALROY DINSTON RICHARDS
         179 ELM ST
         VALLEY STREAM NY 11580

EXH. 5





## THE CITY OF NEW YORK OFFICE OF THE COMPTROLLER
### 1 CENTRE STREET, NEW YORK, N.Y. 10007-2341

Scott M. Stringer
**COMPTROLLER**

015 - 155

Date: 10/15/2019
RE: Disallowance-Over 90 Days

ALROY RICHARDS
Claim number: 2019PI027086
Your Claim/Policy#:

ALROY RICHARDS
179 ELM ST
VALLEY STREAM, NY 11580

Dear Claimant:

   We regret to inform you that your claim has been disallowed. Your claim was not filed within 90 days from the date of occurrence as required by the General Municipal Law Section 50-e. Claims must be filed with either the New York City Office of The Comptroller, the New York City Law Department, the New York City Board of Education or the New York City Health and Hospitals Corporation, depending on the substance of the claim.

   If you have been scheduled for a Comptroller's hearing (50-h, General Municipal Law), please deem the hearing canceled.

Very truly yours,

CHARLES CASTALDO

Bureau of Law & Adjustment

PERSONAL INJURY
(212) 669-4445



**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

WWW.COMPTROLLER.NYC.GOV

EXH. 6

015 - 151

Scott M. Stringer
**COMPTROLLER**

Date:          10/09/2019
Claim No:   2019PI027086
RE:            Acknowledgment of Claim
Your Claim/Policy#:

ALROY RICHARDS
179 ELM ST
VALLEY STREAM, NY 11580

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence**.

If you have any questions regarding your claim, you may contact us at 212-669-2478 for claims involving personal injury.

Sincerely,

Bureau of Law & Adjustment

CITY OF NEW YORK
IN THE STATE OF NEW YORK
COMPLAINT

CITY OF N.Y. LAW DEPT.
OFFICE OF CORP. COUNSEL
COMMUNICATIONS UNIT

**NOTICE OF CLAIM**

**FILE NO.:** 2019 OCT -8 P 4: 29
2019 PI 027086

**TRAFFIC TICKET #ABB1666862-2018**
**I.A.B. #2018 - 41661**

**ALROY RICHARDS**

_____

                                    **Complainant**

        Vs.

**CITY OF NEW YORK** aka **OFFICE OF THE NEW YORK CITY COMPTROLLER**

_____

                                    **Respondent #1**

**NEW YORK POLICE DEPARTMENT** aka **N.Y.P.D.**

_____

                                    **Respondent #2**

        **PLEASE TAKE NOTICE**, that **I, ALROY RICHARDS,** herein called **the CLAIMANT, which will more commonly called the COMPLAINANT,** is bringing forth this material complaint, against the **CITY OF NEW YORK,** herein addressed as **OFFICE OF THE NEW YORK CITY COMPTROLLER, enjoined** (now being apprised), herein called **RESPONDENT #1,** or NYC COMPTROLLER, and subsequently including the **NEW YORK POLICE DEPARTMENT** (nominal), also known as the **N.Y.P.D.,** as **RESPONDENTS #2.** This Complaint arose from an incident, in which the Complainant was stopped on **_MONDAY OCTOBER 15, 2018_**, at approximately **7:52 am.** This was general near the vicinity of **Foster Avenue** and **Coney Island Avenue**, Brooklyn, N.Y. 11230, as Complainant was driving his brown **_2015 Nissan Altima_**, registered **JEB 5810**, from Foster Avenue (approaching from general Flatbush Avenue), making **left turn**, unto Coney Island Avenue, and subsequently heading easterly, towards say Sheepshead Bay. Complainant was stopped by a male and female police team, whom were in a **_marked police truck_ #4351**, to be called **_truck B_**, and seemingly being driven by **Officer SAROFF**, of the **70th Precinct**, Brooklyn. Kindly note, that the Complainant had already made another set of reports, about **_police conduct_**, relating to Police Report #2018 – 001 - 01679, C.C.R.B. #2018 – 02618, and F.O.I.L. #2019 – 056-00497, about an unrelated matter, and had predicted that he would have been targeted, by the police, and most likely feared for his life. Please see firstly, **_Complainant's detailed five(5) page October 18, 2018 letter attached_**, as Exhibit, regarding the material issue, of October 15, 2018, inter alia.

EXH. 7

**I, ALROY RICHARDS, Complainant** now further state:

- That my address is 179 Elm Street, Valley Stream, N.Y. 11580. Complainant arrived in the United States in October 2016 – first time here.

- Concerns surround whether Complainant should be proceeding to **United States Constitution** (**U.S.C.**), **sub-section 1983**, in addition to the **Federal Tort Claim Act** (**F.T.C.A.**), with respect to Law Enforcement, and this, the N.Y.P.D.. Further, whether custom, practice, belief, or policy exist, in relation to the development being referred to.

- That Complainant work in the general Coney Island Avenue area, and was on my way to work that morning (October 15, 2018), driving Nissan Altima JEB 5810, dressed in long sleeved shirt, cotton pants, and neck tie, and that Complainant was the only occupant in said vehicle.

- That the Complainant was driving normally, and at normal speed, and was not under the influence of any form of psychotropic substances, neither did Complainant committed, was about to, nor was in process of committing any infractions.

- Complainant, for his own safety, and in reservation of further potential evidences, will not specifically comment, as to whether Complainant is being *tracked*, *targeted*, *maligned*, *punished*, *being illicitly surveilled*, *life is being disrupted*, personnel *endeavoring on entrapment* (for what? Complainant is not aware), efforts are being made *for Complainant to lose* all jobs held, etc. Surveillance could include *hidden cameras* (legal?), *tracking devices* on vehicle and other equipment, *listening devices*, *interception of communications* (cellphone, computers, emails), being *tracked by human resources*. Could this be so? May be in a forum of say *Qualified Privilege*.

- Complainant's *Nissan Altima JEB 5810 was* at the front of the line, **stationary**, at the stoplight, by Coney Island Avenue, and Foster Avenue, with Complainant intending on turning left.

- That copies of the following, are also attached, for your perusal: Traffic ticket #ABB1666862 – 2018, Complainant's *map* or *drawing*, of events, showing *roadway*, *vehicles* in question, and their *procession*, or *direction*, Complainant's October 18, 2018 detailed five(5) page report on matter, *N.Y.P.D. Patrol Borough Brooklyn South Investigations letter* dated *November 13, 2018*, from Lt. A Whitlock *October 23, 2018 email* Complainant to (about **"being "framed"**), that the N.Y.P.D., should consult businesses in and around, with *Closed Circuit Television* (**C.C.T.V.**) *cameras*, to view the events, being referred to. In latter, *Complainant drew business places, in the vicinity, listed over twelve (12) cameras, and asked that, in interests of justice, and fairness, to all, that the N.Y.P.D. seek out, view, and procure these images.* Further correspondence include Complainant's **November 19, 2019 letter**, and his **February 16, 2019 letter** – both to the police, on the matter at hand.

EXH. 7

- Opposite to this intersection, on the other side of Foster Avenue, were a few motor vehicles. These were all ***stationary***. A ***truck*** (dont recall make, nor model), was in a **stationary position at the front, of vehicles**, *along Foster Avenue, facing Complainant's Nissan Altima* JEB 5810, as if it was proceeding left (opposite direction, to where Complainant intended to go), towards say Cortelyou road, or Church Street general locations. Let us call this **truck A**. This is NOT the police truck. Complainant at the time, could not see the other vehicles behind truck A. Height of truck A, is close to 7 feet 2 inches, or so.

- Complainant later found out, after turning left, unto Coney Island Avenue, that the police motor #4351 (truck A) was behind truck B – to be expounded on further.

- There were motor vehicles, traversing to and from, or east-west, and west-east, per se, along Coney Island Avenue, etc, as they had the green light, or "right of way", so to speak.

- Now, importantly, a ***PEDESTRIAN CROSSING*** exist, stretching across Coney Island Avenue, from the fringes of Foster Avenue. On the side of trucks A and police truck 4351 (truck B), the ***pedestrian crossing is to the right, across Coney Island Avenue, from both ends of Foster Avenue*** (see map/drawing, by Complainant). Specifically, the pedestrian crossing is about 2-3 feet, or so, from the outer right fringes, of truck A.

- **Traffic Lights at intersection now changed**.

- **Truck A's driver** (well, truck A – will personify**) turned left, unto Coney Island Avenue**, **heading westerly**, towards say Cortelyou Road, or Church Avenue, general direction, but lingered just a bit, in the intersection.

- **Complainant positioned his Nissan Altima JEB 5810, in the centre roadway, on the left side, intending to turn left, or easterly, in direction of say Sheepshead Bay**.  Traffic on truck A and truck B (police marked truck, 4351) were almost now stationary.

- As Complainant was about to "inch further" watching the pedestrian traffic, the pedestrians then suddenly "rushed" unto the pedestrian crossing, especially from side where truck A and truck B were positioned. Complainant then stopped his motor vehicle at the intersection, of course, to allow the pedestrians to cross. NO DOUBT. COMPLAINANT WOULD NOT HAVE DONE OTHERWISE.

- ***No other vehicles, inclusive of police truck (B), 4351, were proceeding right, unto Coney island Avenue, from opposing end of Foster Avenue i.e. facing side that Complainant's*** Nissan motorcar JEB 5810 was on.

- **Complainant glanced and saw where truck B, now identified as a marked police truck 4351, was positioned behind truck A. *Indications are that truck B (police truck 4351) was heading straight, across Foster Avenue, from north, to south. It eventually attempted to do so***.

- ***However, the marked police truck (A), 4351, then seemed to have veered a little, to its right, but was still being blocked by truck A***.
- The pedestrian traffic now cleared, and the Complainant was now able to proceed – clearly, without any obstructions. After all, Complainant was proceeding to work, and would be 'blocking the intersection", causing problems.
- Surprisingly, Complainant then realized that Officer ***Saroff was waiving his hand violently, at the Complainant***, whilst still seated behind police truck 4351, or truck A. It ***seemed threatening***, so Complainant proceeded on his business (the left turn).
- ***NO LOUD HAILER***, by the police, ***NO FLASHING POLICE LIGHTS***, ***NO POLICE SIRENS***.
- Unlike the police truck 4351 (truck A), Complainant's Nissan motorcar JEB 5810 front windows are not tinted. No traffic or pedestrians impeded Complainant's turn, after wave of pedestrians crossed, so, Complainant headed easterly, along Coney Island Avenue.
- In an effort of stressing safety, Complainant amicably pointed to the pedestrian crossing, to the police team. There exist no other way for the police truck to have proceeded, unless, to collide into Complainant's vehicle. Hence, Complainant had to clear the area. ***C.C.T.V. images will suffice***.
- As Complainant proceeded cautiously, and within relative speed, along Coney Island Avenue, he realized that he was being hastily, hurriedly, and angrily pursued, by truck B or marked police truck 4351.

This is the part, which Complainant is overly concerned about. **NOTE**:

- Traffic were darting to right, and left of complainant, along the one way, on east bound lane. There were about three(3) to four(4) lanes, and Complainant was positioned in left closest to outer road way, nearer opposing traffic.
- ***Marked police truck #4351, then pulled up relatively close, behind Complainant's Nissan motorcar JEB 5810, with police siren now on***. There exist a yellow safety area to left of Complainant's vehicle, therefore, in interest of safety, ***Complainant pulled his motor car, into that marked safety zone, for obvious safety reasons, for himself, and other motorists, heading in the said direction. The police team, via Officer Saroff, then stated over the police loud hailer, that Complainant should pull to the right, into oncoming traffic***. Complainant "motioned" to the police team that he is unable to do so, for obvious reasons.
- This police team, had to "<u>use marked police truck 4351, as a shield, to oncoming vehicles</u>", approaching from behind, stopping them in the process, "<u>in order to facilitate Complainant to pull to his right</u>", as is being directed. Complainant then stopped a short distance ahead of the said police team. The police team stopped truck B behind Complainant's Nissan Altima, and both police Officers proceeded to walk towards

Complainant's parked vehicle. Officer Saroff approached from left side of Complainant's car, while the female police Officer, approached from the passenger side.

- **Complainant fully extended the necessary courtesies to the police Officers, and** *__Complainant proceeded to respectfully, and professionally inquire as to the reasons, for the police stopping the Complainant__*.

- *__Officer Saroff became quite boisterous, and had an angry tone, in his voice__*. May be, in words of the Complainant, repugnancy could be the word. Surprisingly, __both police Officers, for no reason, were holding unto their pistols__; their pistols being in their pistol holsters. *__Complainant's hands were 'clear", and 'in the open position", prior to, and at that present moment. Complainant was being cordial, and did not "pose a  threat", to the material police team__*. **Neither was Complainant "acting in any suspicious way".**

- Complainant then asked the police team, and specifically Office Saroff – *what is the reason for the stop, and whether Complainant had done anything wrong*. Officer __Saroff immediately became irate, threatening, and rather loud, without cause. Complainant then asked Officer Saroff to be more respectful, and to remain calm__. Apparently this did not "sit well" with Officer Saroff, whom continued on his tirade, towards the Complainant, further frightening the Complainant. Recall now, the approaching police Officers had their hands on their pistols. The female police officer though, remained composed, and calm, and showed respect.

- *__Were the police Officers wearing body cameras?__* This too would have been of great assistance, in the resolution. Upon request by the police Officers, the Complainant then __handed Officer Saroff his (Complainant's)__ *Driver's License, Motor Vehicle Registration*, and *Motor Vehicle Insurance*. Officer Saroff then said that he *"will be issuing a traffic ticket"*, to the Complainant, this, as the __Complainant still continued to question the purpose of the police team's mission__ (towards Complainant).

- The police team then retreated to their vehicle (behind), leaving Complainant seated in his Nissan Altima JEB 5810. No other explanations, or excuses were offered, by the police, then. Thereafter, the __police later returned to the Complainant fifteen(15) to twenty(20) minutes later__ ("questionable" – what were the "checks", and "suspicions" about?), each police Officer approaching from same side of Complainant's Nissan Altima, as before, and Officer Saroff handed the Complainant his documents.

- *__Complainant again asked what was the stop for, and why did the police took so long (15-20 minutes), to process the Complainant's documents. Officer Saroff again became boisterous, and began to step back, without reason. Complainant further felt afraid, and tried calming down Officer Saroff. It was the female police Officer that motioned to Officer Saroff, to calm down, much to Complainant's relief – and may be saving__*

EXH. 7

_**Complainant's life**_; just may be. Complainant's hands were still visible, Complainant meant no harm, and that the Complainant was still seated in his Nissan Altima.

- _**Any other rationale human being, in a similar position, facing the same circumstances, would have been possibly asking the police questions**_.

- Complainant's actions are not unusual, and wasn't meant to be construed as "challenging the police" (may be Officer Saroff may have felt that way, unfortunately). The female police Officer appeared far more "apologetic", than Officer Saroff. Good going.

- Please be advised, that the Complainant has no wish whatsoever to tarnish, malign or sully Officer Saroff's reputation, career, credibility, nor integrity, neither that of any other N.Y.P.D. Officer; never Complainant's purpose. General concern is with the N.Y.P.D. and whether the actions (of N.Y.P.D.) were reasonable, or Constitutional.

Therefore, the Complainant not only felt _**dehumanized, insulted**_, 'targeted', and _**faced chagrin**_, as the police had the _**authority**_, and _**power**_, but knew that he had to take the matter much further. Hence, he wrote to the police, including copying the _**70th Precinct Commanding Officer, Deputy Inspector, Mr. James Palumbo**_, whom must have referred matter to the police's _**Patrol Borough Brooklyn South**_ (P.B.B.S.), for investigations. Is it that the mantra to: _**serve, protect**_, and _**reassure**_, are just fallacies? Are they only Proprietary Rights, to only some persons, may be (just may be) based on <u>creed</u>, <u>religion</u>, <u>nationality</u>, <u>where you were born</u>, <u>gender</u>, <u>sexual orientation</u>, <u>race</u>, <u>color</u>, <u>education</u>, or, may be for simply finally "having a voice"? Just now, Complainant is only embarking on hypotheses. Assumptions; simply. The N.Y.P.D. is not proving, or has not proven the Complainant wrong. **<u>Profiling</u>** may be? Why? Is this legal? **Verifiable, truthful? No disdain, nor dislike involved? No ridiculing?**

Police personnel that were either arbitrarily contacted by the Complainant, through calls, to investigative unit(s), or whom contacted the Complainant, included:

10/23/2018    -    _**Lt. Whitlock**_
10/24/2018         I.A.B.'s _**Officer Shantel Moore**_
                   _**Lt. Anderson**_

Please note the sequence of events. Now, not only is the Complainant new to this jurisdiction, but Complainant was, and is presently representing himself. As Pro-Se, it is reasonable to conclude, and to see, that the Pro-Se Complainant had been in _**Distress**_, suffering, and not recovering from not only the 10/15/2018 incident (_**suffering long term**_), but the N.Y.P.D.'s actions, or inactions. "Complications" resulted, over a rather distinct and solvable matter. Complainant had no remorse expressed to him, excepting, in Good Faith, by Lt. Anderson. No reasonableness were extended, nor exercised, in the material situation so mentioned.

EXH. 7

### *Other Points*

1. The Complainant has subsequently received "quite a number" of traffic tickets, since especially, this 10/15/2018 encounter, with the police. Is this co-related to the many "network of agencies", at the disposal of the police? Ticket were even 'erroneously issued", to Complainant, with registration JEB 5810 (Complainant's), from as far back as March 2018. However, the Complainant acquired this 2015 Nissan Altima, September 22, 2018. No other motor vehicles were being driven in Complainant's name. Result? The matter was dismissed, based on careful scrutiny, by the Complainant. In other instances, some ticketing indicated that the Complainant's vehicle was being directly targeted. At times, vehicles parked in front of, beside, and behind Complainant's 2015 Nissan Altima JEB 5810, are not ticketed; yet, Complainant's is ticketed. This led to Complainant's protests, after submission of photographs, etc, for blatant violations, by other motorists, culminating in a few tickets being dismissed. Complainant continue to fight traffic tickets, and, in an effort to "combat" this "attack", has stopped driven, for a while, to "make observations".

2. Does this malice, and prejudice, if any, tend to extend to educational institutions that the Complainant has enrolled in, in the U.S., places of residences, and places of work? A Mere questions, of course.

3. Portions of the Complainant's 10/18/2018 letter will now be redacted, by the Complainant, in the interest of his safety. See highlighted section. "Without Prejudice", the Complainant heard of a reported witness being shot to death, by unknown assailants, allegedly making escape, in a silver sedan motor car, after that witness (now deceased) part took in a recent trial. Complainant's protection is key.

4. **Complainant is now constantly living in fear**. Is the Complainant under 24 hour surveillance? If so, why? Is he being followed every where, to include places of worship, residence, work, and other places? Whom, if any, are the persons "following" the Complainant? Is this safe? IS someone trying, in al respect, to "set up", or discredit the Complainant?

5. When applicable, and if such information is retrieved, the Complainant will show one such "intended attack", on the Complainant, by an unknown adult male, whom, for three(3) or so minutes, "confronted", close marked, purposefully, and deliberately tried to restrict Complainant's movements, in a rather limited spaced area. This was in public space (well, an area used by the public). Appeared random, but is it? If that video is shown, it will reveal a 'telling tale", that Complainant was "chosen". Complainant remained calm, composed, and didn't tried to escalate, nor "react" to this intimidation.

6. Was the 03/09/2018 verbal and physical attack on the Complainant, by a Manager employed to same company that Complainant worked for, one such plan? Why hasn't

that aggressor being arrested, or profiled, despite the reports, and availability of C.C.T.V. images? Does the police share any "relations" with this suspect (03/09/2018 matter, in New York, N.Y.)?

7. Complainant is wondering whether there will be any further "retaliations" that he may face, considering fear for his safety. Complainant's livelihood, career, social life, and future, is being severely impacted. *Is this what happens to a Whistleblower*?

8. Is it that the Complainant may have somehow reserved some sort of 'evidences" emerging from the 10/15/2018 traffic stop? Checks will be made.

9. Complainant had set a **Hearing, in the Traffic Court** (D.M.V.), for today, **Tuesday October 1, 2019** for **1:00 pm**. This was done from October 2018 – almost one(1) year ago. *Confirmation number* is *20181022 – 00544818*. Much to Complainant's dismay, a letter from the Department of Motor Vehicle (Hearings), dated 09/23/2019, was sent out to the Complainant, changing the date to 09/04/2020 (next year). Given (all) the developments, Complainant's fears, and matters external to "these" issues, Complainant disagreed, and instead, went to the D.M.V. A new date is early November 2019, was set, and Complainant told the Court, to inform the police Officer(s), as again, their rights are not meant to arbitrarily, and wantonly exceed that of the Complainant. Complainant had no knowledge of the earlier change in court date, until late last week (Post Office mail).

*Complainant had not agreed not to pursue matter, nor did he indicate a need, NOT TO FURTHER COMPLAIN*. No resolutions were attempted, or worked out, in any event, by subsequent processes. This more than **compounded suffering, and Emotional Distresses, for Complainant; Complainant also not privy to C.C.T.V. images, nor offered to be shown the C.C.T.V. images, effecting closure**.

The contents of the various correspondences, outlined that the N.Y.P.D. could have done much more, in pursuit of this issue. In the view of the Complainant, they N.Y.P.D. failed to have served, protected and reassured the Complainant. It is a travesty of justice, in its blatant form. Hence, the following additional points (and **RELIEF BEING SOUGHT**), regarding MISSTEPS, by the N.Y.P.D. (*CAUSATIVE ACTIONS, and or EFFECTS*), in the development:

- Complainant had a right to be informed of documents relating to the outcome of every step of the investigations. This included (but is not limited to): *whether N.Y.P.D. Officers on the crime scene, were wearing body cameras*, *whether interviews were done internally*, *how did investigations came to indicate that the N.Y.P.D. was absolved of any 'wrongdoing" in the issue*,  what about *minutes, or notes from hearing, or meeting(s)*?

- The N.Y.P.D. *intentionally and recklessly acted, causing Emotional Distress, to Complainant*.
- The N.Y.P.D. *caused Emotional Distress to Complainant, through "reckless acts"*, in the matter.
- *Conduct* of the N.Y.P.D. is seen to be *"extreme", and outrageous, relative to the Complainant*, in the issue. It *went beyond all reasonable or possible bounds, of decency*.
- That the resulting situation is *one that any reasonable, rationale human being would have to put up with, nor tolerate*.
- The N.Y.P.D. *knew that the Complainant would have been probably succeptible to Emotional Distress*, from their actions, or lack of actions, in the matter.
- *Was this an isolated incident, or is the Complainant being profiled, whether prior to the incident, reported on 03/09/2018, or subsequently afterwards, plus this 10/15/2018 matter*?
- That the *N.Y.P.D. had the authority, and power (still do), had access to all resources, and information, but failed to have acted in the best interests of the frightened*, "threatened", and emotionally shaken Complainant.
- The *resulting suffering by the Complainant is not short-lived, is intense (severe)*, and continues to this day.
- *Reaction, follow up* (as directed – by N.Y.P.D.) *of, or by the Complainant, isn't unusual, in such circumstances*.
- *Isnt it that the N.Y.P.D. "owe a duty of care", to all citizens, irrespective?*
- In relation to the Complainant, *is this "reaction" to the Complainant, by the N.Y.P.D., distinct to, or differ, from any other general police responsibility that the N.Y.P.D. has with the general public, at large?*
- *Has the N.Y.P.D.'s actions, or inactions, minimized my fears, and the ("unnecessary) risk that I faced, or potentially continue to face?*
- Actions of the N.Y.P.D., in the issue, appear *pre-disposed*, *calculating*, *arbitrary*, *egregious*, and *callous*.
- *N.Y.P.D. failed to have viewed the critical C.C.T.V. images,* as in any normal situation of crimes, situations, and other developments, reported to the N.Y.P.D. What if the Complainant was "making public mischief" (using an engaging statement, to show degree of wanton abnormality, in how the N.Y.P.D. handled the matter)?
- A travesty of justice, for the Complainant, as Pro-Se, in this apparent operation by *pre-text*, by the N.Y.P.D.
- Complainant is not averse to a **50-H HEARING.**

- **Welfare of, and other aspects of Complainant's life, are being significantly impeded, consequent to/from these material precipitating actions** (matter at hand) against, or towards him.

Consequently, and in pursuit of the matter, Complainant felt that the N.Y.P.D. erred, and the Complainant is seeking DAMAGES, as a result. This position by the Complainant, is not unreasonable. Therefore, Complainant has no issue with a **50-H**, by the relevant arbitrators. Complainant, in his "very limited knowledge", is of the view that *serious Intentional and Negligent Emotional Distress* resulted, for him, relative to the N.Y.P.D.  Complainant is also of the view, that *Title 7 of the 1964 Civil Rights Act*, is or was breached. By the N.Y.P.D., where the Complainant is concerned. Also, breach of *Administrative Processes*, and breach of *Due Processes*. The Complainant would probably, as this juncture, introduce the *Age in Discrimination Act of 1975*; not as yet. It is mostly Title 7 Act. Complainant now seek Damages for:

| | | |
|---|---|---|
| **EMOTIONAL DISTRESS** | - | $700,000.00 |
| **BREACH OF TITLE 7, 1964 CIVIL RIGHTS** | - | $400,000.00 |
| (Including, but not limited to, Breach of Due Processes, & of Administrative Processes) | | |
| **MALICIOUS PROSECUTION** | - | $800,000.00 |
| **NEGLIGENCE** | - | $350,000.00 |
| **RETALIATIONS** | - | $200,000.00 |
| **LIBEL** | - | $300,000.00 |
| | | _____ |
| | | **$2,750,000.00** |
| | | ============ |

Or, seeking an award of **two(2) million seven hundred and fifty thousand dollars ($2,750,000.00)** plus interests, and with any other relief, that the arbitration deem necessary, proper, and just, to the Complainant.

Attached hereto, are **Appendices**, as *EXHIBITS*, but which may not be limited to these matters only - case files, and Laws (Principles/Statutes) to be further perused.

Complainant is looking forward to the processes, and do pray that his dignity, humanity, decency, and Rights, will be restored, and upheld.

EXH. 7

**WHEREFORE,** the deponent prays that the arbitration process will review the Complainant's facts, and requests presented, for the matter to be upheld in favor of the Complainant, and the requisite awards be made. Once the damages can be attempted, or shown to be improving, then the healing process will commence. Complainant does not wish to distort, mislead, or misinterpret any matter, nor to be disingenuous, and that the claims in narratives, are not frivolous, culminating in the award being claimed. Let us all endeavor in adhering to the concepts of _**non-discrimination**_, _**equal opportunity**_, _**diversity**_, and _**inclusiveness**_, inter alia. There are other matters that could have been mentioned. However, and if necessary, may be concept of Qualified Privilege would have been best employed, in order to execute same.

Dated: _8th_ day of October 2019

County of: Kings

_____
**ALROY RICHARDS**
**Complainant**


Sworn to, before me, this _8th_ day of October 2019.

_____
**Notary Public**

```
CAMILE TAYLOR
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01TA6137717
Qualified in Nassau County
Commission Expires January 8, 2022
```

EXH. 7

Complainant:          **ALROY RICHARDS**

Respondents:          **CITY OF NEW YORK**, as **OFFICE OF NEW YORK CITY COMPTROLLER**
                               and **NEW YORK CITY POLICE DEPARTMENT (N.Y.P.D.)**

File No.:               2019 PI 027086

Emerging From:     N.Y.P.D. **TRAFFIC TICKET #ABB1666862**, and **I.A.B.'s #2018-41661**

## EXHIBITS

**EXHIBIT A** – **Complainant's letter**, dated 10/18/2018, containing five(5) pages.

**EXHIBIT B** – **Complainant's map/drawing** of location, containing one(1) page.
regarding the 10/15/2018 matter, comprising one(1) page.

**EXHIBIT C** – **Complainant's eight(8) photographs,** of scene, done on 10/15/2018, totaling
eight(8) pages.

**EXHIBIT D** – copy of **Traffic Ticket #ABB1666862**, containing two(2) pages.

**EXHIBIT E** – **Complainant's email** on 10/23/2018, consisting of two(2) pages, to I.A.B.'s email:
iab@nypd.org.

**EXHIBIT F** – Patrol Borough Brooklyn South's **letter to Complainant**, dated 11/13/2018,
containing one(1) page.

**EXHIBIT G** – **Complainant's letter** dated 11/19/2018, to N.Y.P.D.'s I.A.B., comprising one(1)
page.

**EXHIBIT H** – **Complainant's letter** dated 02/16/2019, to the P.B..B.S., comprising one(1) page.



## VERIFICATION

**I, ALROY RICHARDS,** also known as the Complainant, being duly sworn, deposes, and says:

That I have read the foregoing Complaint, in presenting my matter, and that I know of the contents therein. The said are true, to my knowledge, free from folly, or frivolities, except as herein stated, to be alleged, on information, as to the matters, I believe them to be true. Also, to the best of my knowledge, and information, and belief, formed after an inquiry, reasonable under the circumstances, the presentation of these papers, or the contents therein, are not frivolous, as defined under sub-section C, of section 130-1.1, of the Rules of the Chief Administrator (22 NYCRR).

Dated: ___8th___ day of October 2019

County of: Kings

**ALROY RICHARDS**
**Complainant**

Sworn to, before me, this ___8th___ day of October 2019.

**Notary Public**

> CAMILE TAYLOR
> NOTARY PUBLIC, STATE OF NEW YORK
> Registration No. 01TA6137717
> Qualified in Nassau County
> Commission Expires January 8, 2022

TO:   City of New York Comptroller's Office
      1 Centre Street, Room #1225
      New York, N.Y. 10007

      General Legal Counsel
      New York City Law Department
      100 Church Street
      New York, N.Y. 10007

EXH. 7

## CITY OF NEW YORK - OFFICE OF NEW YORK CITY COMPTROLLER

**NEW YORK CITY**

**STATE OF NEW YORK**

<u>FILE NO.:</u> 2019 PI 027086

**TRAFFIC TICKET #ABB1666862**
**I.A.B. #2018-41661**

**ALROY RICHARDS**

_____
                                        **Complainant**

                    Vs.

**CITY OF NEW YORK** aka **OFFICE OF THE NEW YORK CITY COMPTROLLER**

_____
                                        **Respondent #1**

**NEW YORK POLICE DEPARTMENT** aka **N.Y.P.D.**

_____
                                        **Respondent #2**

Sign Name:        _(signature)_

Print Name:       **ALROY  RICHARDS**

Address:          179 Elm Street
                  Valley Stream, N.Y. 11580

Telephone:        347-779-3620

Service of a copy, the within is herein admitted.

Dated:            8th day of October 2019.

Attorney For:

NEW YORK STATE **Department of Motor Vehicles**

EXH. 8

6 EMPIRE STATE PLAZA, ALBANY, NY 12228

NOTICE OF SCHEDULED HEARING

09/23/19

RICHARDS ALROY DINSTON
179 ELM ST
VALLEY STREAM  NY  11580-4915

POSTAL ID: 291596328

THIS NOTICE REPLACES ANY PREVIOUSLY SCHEDULED DATES FOR THE TICKETS LISTED BELOW.

YOUR NOT GUILTY PLEA IS ON FILE.  YOUR HEARING WILL BE HELD AT:

BROOKLYN SOUTH TRAFFIC VIOLATION BUREAU
2875 WEST 8TH STREET
BROOKLYN, NY 11224

DATE OF HEARING: 09/04/20
TIME OF HEARING:  1:00 PM

IF YOU DO NOT WISH TO APPEAR IN PERSON FOR YOUR HEARING, YOU HAVE THE OPTION OF SUBMITTING A WRITTEN STATEMENT INSTEAD.  WE HAVE ENCLOSED FORM AA-53.2 (STATEMENT IN PLACE OF PERSONAL APPEARANCE).  IF YOU PREFER THIS OPTION, COMPLETE THE FORM AND MAIL IT TO THE ADDRESS WHERE YOUR HEARING WILL BE HELD AT LEAST 2 WEEKS PRIOR TO THE SCHEDULED DATE.

| TICKET # | VIOLATION DESCRIPTION | VIOL DATE | REASON |
|----------|----------------------|-----------|--------|
| ABB1666862 | FLD YLD ROW-LFT TURN | 10/15/18 | ADMINISTRATIVE |

IF YOU CHOOSE TO APPEAR AT THE HEARING INSTEAD OF SUBMITTING A STATEMENT IN PLACE OF PERSONAL APPEARANCE, UPON ARRIVAL CHECK THE DOCKET SCREEN OR BULLETIN BOARD FOR YOUR NAME AND THE ROOM NUMBER OF THE HEARING.

IMPORTANT - BRING THIS NOTICE, YOUR IDENTIFICATION, AND IF AVAILABLE A COPY OF YOUR TRAFFIC TICKET(S) TO THE HEARING.

IF YOU DO NOT SUBMIT A STATEMENT IN PLACE OF PERSONAL APPEARANCE OR COME TO THIS HEARING, YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE IN NEW YORK STATE WILL BE SUSPENDED.  IF SUSPENDED, UNDER THE NEW YORK STATE VEHICLE AND TRAFFIC LAW YOU WILL HAVE TO PAY A  $70 SUSPENSION TERMINATION FEE IN ADDITION TO ALL OTHER FINES AND PENALTIES BEFORE YOUR LICENSE OR DRIVING PRIVILEGES WILL BE RESTORED, REGARDLESS OF WHETHER OR NOT YOU ARE FOUND GUILTY OF THE CHARGE.

IF YOU WISH TO CHANGE YOUR PLEA, YOU MAY BE ELIGIBLE TO PLEAD GUILTY AND PAY THE FINE AND SURCHARGE FOR THE TICKET(S) ABOVE WITH A CREDIT CARD ONLINE AT:
DMV.NY.GOV/EPLEAD.HTM

PLEASE NOTE THAT SOME VIOLATIONS MAY REQUIRE THAT YOU APPEAR AT A TVB OFFICE, EVEN IF YOU WISH TO PLEAD GUILTY.

_Page 1_

— EXH. 9

Name: **RICHARDS, Alroy**     RE: Ticket No. **ABB1666862**

I am the motorist described in the above ticket. I am charged with committing a traffic infraction, and I have pleaded "not guilty" to that charge.

My address is: 179 Elm Street
Valley Stream, N.Y. 11580

My date of birth is: 01/11/1972

N.Y.S. Dept. of Motor Vehicles
Brooklyn TVB
2875 W. 8th Street
Coney Island, NY 11224

I request that the Administrative Law Judge read and consider my statement, and make it part of the record before reaching a decision in my case. I waive my right to appear in person, to question witnesses, and/or to object to any evidence presented at the hearing. I understand that this Statement constitutes my appearance in this matter.

I understand that, in my absence, the Administrative Law Judge and the Department of Motor Vehicles may take any authorized legal action against me as if I were present at the hearing. Such actions include, but are not limited to, imposing fines, surcharges, and fees, and suspending or revoking my driver license or driving privilege, and/or registrations. I reserve the right to appeal any decision against me.

_AFFIDAVIT #2_   "Without Prejudice"

**You MUST explain why you believe you are "not guilty". You MUST enclose a copy of your driver license or government issued photo ID.** *(Attach additional sheets, if necessary, and copies of any evidence.)*

I am being illicitly monitored (surveillance) "harassed" I hereby state that and targeted by the police (N.Y.P.D.). The 10/15/2018 encounter is clear based on "precise tracking devices," having been trailed every day by the police. They also pass disparaging remarks to personnel at my residencies, eateries and places worked/working. In this case report #2018-41661 "an indication." In a 03/09/2018 matter, I was physically attacked by a Manager of my employer under C.C.T.V. Police never arrested suspect. Critical info left off Police Report #2018-001-01679, re: 1st Police Precinct (16 Ericsson Place New York N.Y. 10013. I made complaint to Civilian Complaints Review

**CERTIFICATION:** I certify, under penalty of perjury, that all information I have provided in this Statement and all supporting documents are true. I understand that making a false statement in connection with this Statement may subject me to criminal prosecution under the NYS Penal Law.

SIGNED ▶ [signature]

Motorist Signature

08/26/2019

Date

A-53 (8/16)

Board (C.C.R.B.) #2018-R2618. Wrote eight (8) letters to include N.Y.P.D. Chief of Department. Illicit PROFILING, by N.Y.P.D., whether Union representatives, or top tier, etc. adr

N.Y.S. Dept. of Motor Vehicles
Office of Administrative Adjudication/
Traffic Violations Bureau
Brooklyn TVB
2875 W. 8th Street
Coney Island, NY 11224

EXH. 9

Name: RICHARDS, Alroy
JEB 5810

RE: Ticket No. ABB1666862
on 10/15/2018

I am the motorist described in the above ticket. I am charged with committing a traffic infraction, and I have pleaded "not guilty" to that charge.

My address is: 179 Elm Street
Valley Stream, N.Y. 11580

My date of birth is: 01/17/1972

I request that the Administrative Law Judge read and consider my statement, and make it part of the record before reaching a decision in my case. I waive my right to appear in person, to question witnesses, and/or to object to any evidence presented at the hearing. I understand that this Statement constitutes my appearance in this matter.

I understand that, in my absence, the Administrative Law Judge and the Department of Motor Vehicles may take any authorized legal action against me as if I were present at the hearing. Such actions include, but are not limited to, imposing fines, surcharges, and fees, and suspending or revoking my driver license or driving privilege, and/or registrations. I reserve the right to appeal any decision against me.

**You MUST explain why you believe you are "not guilty". You MUST enclose a copy of your driver license or government issued photo ID.** *(Attach additional sheets, if necessary, and copies of any evidence.)* Good day Hon. Justic

I am the incumbent motorist and I am seeking the Courts' indulgence, in accepting my "NOT GUILTY" plea and to accept into evidence, the following documents:
→ my 10/18/2018 5 page letter to the DMV copied to the Police.
→ nine (9) photographs, at, and near material scene at time.
→ a one (1) page drawing/diagram of vehicles and roadways.
→ copy of material Traffic Ticket # ABB1666862.
→ My follow up letters dated 11/19/2018 and 02/16/2019 respectively.
→ Letter head signed Police letter to me, dated 11/13/2018.
→ Copy of my Driver's License # 326-791-415.

**CERTIFICATION:** I certify, under penalty of perjury, that all information I have provided in this Statement and all supporting documents are true. I understand that making a false statement in connection with this Statement may subject me to criminal prosecution under the NYS Penal Law.

SIGNED ▶ _____          08/14/2019
Motorist Signature                            Date

AA-53 (8/16) Information given is true, and corrective, without bias, and without perjure. I pray I will be exonerated.

STATE | **Motor Vehicles**

CONTINUING

"Without Prejudice"

Office of Administrative Adjudication/
Traffic Violations Bureau

Page 2

Name: RICHARDS, Alroy

RE: Ticket No. ABB 1666 862

EXH. 9

I am the motorist described in the above ticket. I am charged with committing a traffic infraction, and I have pleaded "not guilty" to that charge.

My address is: 179 Elm Street
Valley Stream, N.Y. 11580

My date of birth is: 01/11/1972

I request that the Administrative Law Judge read and consider my statement, and make it part of the record before reaching a decision in my case. I waive my right to appear in person, to question witnesses, and/or to object to any evidence presented at the hearing. I understand that this Statement constitutes my appearance in this matter.

I understand that, in my absence, the Administrative Law Judge and the Department of Motor Vehicles may take any authorized legal action against me as if I were present at the hearing. Such actions include, but are not limited to, imposing fines, surcharges, and fees, and suspending or revoking my driver license or driving privilege, and/or registrations. I reserve the right to appeal any decision against me.

You MUST explain why you believe you are "not guilty". You MUST enclose a copy of your driver license or government issued photo ID. *(Attach additional sheets, if necessary, and copies of any evidence.)*

Continuing...

Investigating Officer was Sgt. Abraham Caraballo of 1st Precinct plus Lieutenants and Sgts from say Internal Affairs Bureau. No pun no aspersions. Surveillance equipment set up inside my Office building, my residence, my cell and house phones "tapped", communications being intercepted and monitored. All these done with disdain and malice to try and isolate me. Employers are also being told to "fire me" from job. The police having been using marked unmarked vehicles, spy equipment" and human resources, negatively towards me.

**CERTIFICATION:** I certify, under penalty of perjury, that all information I have provided in this Statement and all supporting documents are true. I understand that making a false statement in connection with this Statement may subject me to criminal prosecution under the NYS Penal Law.

SIGNED ▶ _____
                    Motorist Signature

Date: 08/26/2019

53 (8/16)

*[handwritten, top right]* to me, with date and signature stamp EXH. 10

179 Elm Street
Valley Stream, N.Y. 11580

February 16, 2019

Lt. Anderson
Patrol Boroughs Brooklyn South
Investigations Unit
Edwards Hall, 2nd Floor
Floyd Bennett Field
Brooklyn, N.Y. 11234

Dear Lt. Anderson:

RE:   **ALROY D. RICHARDS, Complainant in Case #2018 – 41661**
      **My LETTER DATED NOVEMBER 19, 2018**

_____

Reference is made to the subject, as well as our brief telephone conversation during the course of this week (initiated by yours truly), along with our telephone discussion before, in your seeking clarity, on the issue reported.

I hereby acknowledge receipt of your letter to me, dated November 13, 2018, relative to the reports that I made. The contents of your letter were duly noted. This is something that I should have acknowledged prior (i.e. receipt of your letter). My initial November 19, 2018 one(1) page letter is now being resent to you (attached).

Also attached, is an extra copy of said (this) 01/19/2018 letter I wrote to you (your entity). Consequently, I am asking that a stamp and date or signature and date be affixed to this letter of mine, and this material copy be sent to me, to the address so detailed. Enclosed also, is a self stamped envelope, addressed to me – as recipient.

Thanking you for your efforts at resolution of the issue.

Yours sincerely

*[signature]*

**ALROY D. RICHARDS**

**Att.**

*[handwritten note]* Mr. Richards, I have received your acknowledgment. Thank you, *[signature]*

*(handwritten: COPY) — for RETURN to Me (DATE, STAMP)*

November 19, 2018

**"WITHOUT PREJUDICE"**

*(handwritten: EXH. 11)*

The Internal Affairs Bureau
New York Police Department
1 Police Plaza
New York, NY 10038

**ATTENTION: LT. WHITLOCK**

Lt. Whitlock:

RE:   **ALROY D. RICHARDS – CIVILIAN COMPLAINANT, Case #2018-41661**
      **TRAFFIC TICKET #ABB1666862 (and My 10/18/2018 Letter, With Attachments)**

---

Reference is made to my telephone call with you, on October 24, 2018, with respect to the complaint against Officer Saroff, as well as that with Officer Shantell, also by phone, on October 23, 2018, on the said issue. I should be free from harassment, and (illicit) profiling, especially based on certain preformed concepts. Important though, are: **non-discrimination**, ("illegal") **no profiling, diversity, equality, inclusiveness, equity**, and a society that does not promote bias, and prejudice. All of us (I believe), are grateful for residing in this great state, and great country; no "gods" live on earth, well as far as I am aware – unless someone can show me otherwise.

Based on the need for an effective and unbiased investigation, I am merely doing a follow up, predicated on the Freedom of Information Law (F.O.I.L.). I am reasonably expecting that the outcomes will be outlined to me, as I remain adamant, that I was not treated fairly (and continue to be treated this way, by persons whom display malice, prejudice, and stereotypical behavior). Let us hope that the requisite documentation (to include **C.C.T.V. images**), will be disclosed to me, in due course. Reasonableness (with references), is key.

It is still my view, that, that there will be no disdain, nor predispositions towards the complainant (I am not referring to you, neither any other person, in particular). The expectations are that concepts of the "American dream" (equity, equality, interalia) will be upheld. I now leave this matter, in capable hands, and hope that this wont be treated with disregard. Kindly stamp and return an attached copy of this (material) letter, as an indication that I am again registering my complaint, to the New York Police Department (N.Y.P.D.).

Regards.

Yours sincerely

*(signature)*

**ALROY D. RICHARDS**

*(handwritten: Mr. Richards; I have received this acknowledgment as well.)*

*(signature)*



POLICE DEPARTMENT

Patrol Borough Brooklyn South Investigations Unit
Edwards Hall, 2nd Floor
Floyd Bennett Field
Brooklyn, NY 11234

EX H. 12

November 13, 2018

Mr. Alroy Richards
179 Elm Street
Valley Stream, NY 11580

Mr. Richards,

My office we has completed the investigation into allegation(s) you made stemming from an incident (summons) that occurred on October 15, 2018. At this time, we have not found any evidence of misconduct on behalf of the officer(s) involved; however, the concerns you and I discussed when we spoke were shared with the officer who issued you the summons. While he did offer a different version of events, he was understanding of your perception of the incident and seemed open to bettering future interactions with community members.

Please be reminded that you do have the right to dispute this summons. You are urged to keep your scheduled hearing date so you may present your case before a Traffic Violations Bureau magistrate.

Sincerely,

Lieutenant Anderson
NYC Police Department

IAB Log # 18-41661

COURTESY   •   PROFESSIONALISM   •   RESPECT

PD 150-151 (Rev. 1-07-8)

EXH. 12



**POLICE DEPARTMENT**

NEW YORK, N.Y. 10038

_____ Investigations Unit
_____ards Hall, 2nd FL
_____oyd Bennett Field
_____klyn, NY 11234



FIRST CLASS

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 10038  $ 000.47
02 4W
0000349194 NOV 14 20

Mr. Alrey Ricards
179 Elm Street
Valley Stream, NY 11580

POLICE EMERGENCY ONLY

DIAL 911

1i5808491S C010

EXH. 13

**alroyrichards7**

I telephoned your office today, at 1357 hours, where I got email, and fax information, from a LT. WHITLOCK. Please note though, that I didn't get to explain mat    Tue, Oct 23, 2018, 2:11 PM

I telephoned your office today, at 1357 hours, where I got email, and fax information, from a LT. WHITLOCK. Please note though, that I didn't get to explain mat

**alroyrichards7 <alroyrichards7@gmail.com>**    Tue, Oct 23, 2018, 2:11 PM


iab

I telephoned your office today, at 1357 hours, where I got email, and fax information, from a LT. WHITLOCK. Please note though, that I didn't get to explain matters to him, as I was calling from work. Kindly see the attached, which are self explanatory - 5 page letter, traffic ticket, one hand drawn map, along with eight(8) photographs, of the scene.

Thanking you for promptly procuring the requisite CCTV images, when this is eventually done. I have no doubt that civilians can be "framed", and is making this small step.

My contact information is on the letter.

Att.

Sent from my MetroPCS 4G LTE Android Device

Reply    Forward

[ABCMDCNTR <IABCMDCNTR@nypd.org>

EXH. 13

Tue, Oct 23, 2018, 2:34 PM

me

There is no attachment on the prior email.

EXH. 14

179 Elm Street, Valley Stream
Long Island, NY 11580
Tele #347-779-3620
Email: alroyrichards7@gmail.com

October 18, 2018

'WITHOUT PREJUDICE'

The Director of Investigations
(Alleged) Traffic Violations Plea
Department of Motor Vehicles (DMV)
P.O. Box 2950-ESP
Albany, NY 12220-0950

N.Y.S. Dept. of Motor Vehicles
Brooklyn TVB
2875 W. 8th Street
Coney Island, NY 11224

Dear Sir/Madam:

RE:   **ALROY D. RICHARDS – New York State (NYS) DRIVER'S LICENCE #326791415**
**2015 NISSAN ALTIMA, REGISTRATION – JEB 5810**
**FRAUDULENT,CONCOCTED (REPORTED) TRAFFIC VIOLATIONS – TICKET #ABB1666862**
**MONDAY OCTOBER 12, 2018, Intersection of CONEY ISLAND and FOSTER AVENUES**
**BROOKLYN, NY**

Good day to you. I write to you, to inform you of the seemingly malicious manner (towards me), at caption, and ***hereby categorically deny any such allegations***. In writing this letter, I am also copying the Commanding Officer of ***Police Precinct #070***, reportedly being at 154 Lawrence Avenue, Brooklyn, NY 11230. A copy of this ticket issued to me, by Police Officer SAROFF, is hereby attached for your attention. Let me also say that the behavior of the police were most disgraceful, threatening, and intimidating, appeared to have had some elements of prejudice in the physical approach, as well as handling of the matter. I had no idea that the police could actually frame persons. Now I have had my experience. It is my first time in this great City, great state, and great country, and I arrived (migrated here) in October 2016, from Kingston, Jamaica, West Indies. Vindictive would have been too "soft" a word, to describe the action, of particularly ***Officer Saroff, whom was with a (police) female colleague***, of similar Caucasian descent. If (especially) Officer Saroff should be seen as an epitome of the New York City Police Department (NYPD), then I can imagine this is potentially not the first time a civilian will be making a complaint against his abhorrent demeanor, but it will not augur well for police-citizen relationship. The checks will reveal that the police truck was blue and white in colour, and marked (NYPD) – with numbers ***4351***. I will call this ***truck B***, for ease of reference.

On ***Monday October 15, 2018***, at ***7:52 am***, I was driving my brown Nissan Altima sedan motorcar, along ***Foster Avenue***, Brooklyn, NY, heading in a general westerly direction, towards Coney Island Avenue, due westerly. I was approaching from the direction of Flatbush Avenue (which is located to the East). Now, all was well with my driving, and was in the process of

EXH. 14

observing all safety precautions. Coney Island and Foster Avenues intersect, almost at perpendicular angles, cutting across each other. Coney Island Avenue runs north-south, and Foster Avenue runs east-west. Please note the time I mentioned. I proceeded to stop at the stoplight, on Foster Avenue, and *I put on my indicator, for turning left, unto Coney Island Avenue (intending to go south). My vehicle was exactly at the front of that line.* In the opposite direction, on Foster Avenue (across Coney Island Avenue), a motor vehicle was stationary at the front of the stoplight, and *a TRUCK (to be called A), which was in line (another vehicle being exactly behind it, and which turned out later to be the marked police truck) at the front of the line, and was stationary, almost stationary i.e. barely moving.* Its (material truck, not that of the police) height is about 7 feet 2 inches, or so. Truck A's left indicator was put (still stationary), (its driver) intending to proceed left, unto Coney Island Avenue (i.e. intending to head northerly). Recall now, that another motor vehicle was directly ahead of it, travelling in the same direction. My Nissan Altima was. Stationary.

The other motor vehicle, was apparently behind this truck being referred to (facing oncoming vehicles from my side), and this later turned out to be truck B – the marked police truck. First motor vehicle proceeded straight ahead , or so (unto Coney island Avenue). While truck A remained in the area, the driver wishing to go left, from his side. Vehicles were previously traversing to and fro, along Coney Island Avenue, as they had the green light. A pedestrian crossing is located across Coney Island Avenue, along the general line of sight of Foster Avenue (the latter stretching across Coney Island Avenue). There were massive amounts of pedestrians on both sides of Coney Island/Foster Avenues. On my side, the pedestrian crossing was to the left of my motorcar, and was 3-4 or so feet away, from the outer left fringes, of my motorcar. Contrastingly, **the pedestrian crossing on the other side i.e. on the side of the trucks A, and B, was to their right, just 2-3 feet away from the truck A's right outer fringes**.

The lights for general north-south traffic was changed to red, and green lights were given for west-east i.e. general either way for traffic stopped on Foster Avenue. Please recall, my motorcar is at the front, on the easterly side of Foster Avenue (facing westerly side of Foster Avenue). *Truck A (or truck's driver) then proceeded to centre at the intersection, waiting to go left, or northerly, along Coney Island Avenue, but was not that much farther from its original position. I wasn't able to identify truck B (the police truck),as it was being obscured by truck A.* Simultaneously, *I also positioned my motorcar, at the centre of the intersection, intending to turn left, or southerly, along Coney Island Avenue – traffic on side of trucks A and B, still stationary.* However, *I waited, as pedestrians began to immediately scurry across, from the westerly side, in opposite direction, to position of my motorcar*, much to my surprise (manner in which they rushed, luckily, I always approached with caution, and always respect pedestrians – they are important too, and have no "hardcover", as protection. No other motor vehicles were proceeding right, from west, unto Coney Island Avenue (in direction I intended on heading).

Hence, I waited. As I did, truck B remained behind truck A.. *The marked police vehicle(truck B) veered slightly right.I was unable to definitively decipher the rason for that move, as the pedestrian crossing was to their right, and heavy pedestrian traffic, were in the process of*

21

EXH. - 14

_crossing_. **They (the police) did not put on any indicator to turn right**, **did not have on flashing lights**, and **did not have on police sirens**. Any **CCTV images** in that area will reveal that, and all other details. I will allude to actual positioning of all (private) CCTV cameras seen, in that area, later in this presentation. **Apparently, and from evidence written on the ticket, by the incumbent Police Officer, the police truck (truck B) was heading easterly, i.e. straight across Coney Island Avenue, and continuing unto Foster Avenue**. Wow! Interesting, as my motorcar was still positioned at an angle, of say 45 degrees, facing south Coney Island Avenue, as pedestrians closer to the westerly side (ironically where the police truck is located), continue to cross, using the designated crossing.  Again, this police truck was unable to proceed, as it was still being blocked, by the material truck (truck A) immediately infront that police truck (truck B). What were the police 's intentions? "Run" the pedestrians off the crossing, or may be were planning to may be "mow them down"? Just a little rhetoric. I am still thinking though – what the real intentions of the police were.

Then, I saw **Officer Saroff (seated in the police truck) apparently waving his hand, at me, may be out of ego, in quite a threatening and disrespectful manner**. May be only he could provide a plausible explanation. Surprisingly, I realised that his "anger" was being directed at me. Shocking. Prejudice? Or simply a matter culminating into what was to come (what I would have faced). Was he intending on punishing me? Why? He (Officer Saroff) didn't expect me to hit the pedestrians off the pedestrian crossing! I am almost sure, and would want to speak in the affirmative. **As their side of traffic was stationary, and no pedestrians had proceeded to cross, from either directions, and that my motor car was in the process of turning left, to try and clear the intersection. This is inevitable** I am most perturbed about the decision by the police. **In an effort to point out safety to the police, I simply, amicably, and respectfully pointed to the ensuing pedestrian traffic**, as my motor car was now a few feet away, from the edge of the pedestrian crossing, as I waited to fully turn (but pedestrians were still crossing). Subsequently, the pedestrians cleared that area, and I proceeded southerly, unto Coney Island Avenue. As I did, I then heard the material police team put on sirens (no flashing lights). **I looked through my rear view, and realised that the police truck was now aggressively "in pursuit" of my motorcar**; I saw the expression on the face of the incumbent driver, Officer Saroff, through my rear view mirrors. My motorcar was in the extreme left lane. **No loud hailer were on**.

Traffic were darting to my right and left, but moreso, to my right. There exist a marked (yellow) safety "diagonal" area/grid, to my right. Hence, I stopped there, by indicating, and pulling over. **The police, were now behind my motorcar, but then pulled immediately to my right, and asked me to pull over to the right, instead. Again, I informed the police team, that it was not practical and feasible to do so .** This police team then facilitated my pulling over to the right, where I then stopped, observing all safety precautions, and proceeded to retrieve my documents. Both Police Officers disembarked from their police truck; Officer Saroff came to the driver's side of my motorcar (left), while the female Police Officer came to the right hand side of my motorcar. I extended the necessary courtesies, to the police team, and respectfully and professionally asked the reason why I was being stopped. Officer Saroff commenced in a rather aggressive and loud manner (not just about his tone), but seemed to be "immediately" exuding

3/

EXH. 14

or displaying"power", and both Police Officers appeared to be holding unto their pistols, which were both holstered. Unsure **about what takes place in New York, or elsewhere, but I wasn't "resisting" the approach of the police, was not acting suspicious,** and was **complying with all requests, inclusive of those for documents.** I was on my way to work, was in work clothing, my hands were distinctly visible. No passengers were in my motorcar. Importantly, I remained calm, and begin to ask questions (such as **wearing of body cameras**); the team said "no, they were no wearing any. Officer Saroff, on my questioning, then commented that I ***"failed to have yielded to traffic"***.

Oh, I see. So, a **minority person (of African descent)**, may be whom **shouldn't be driving a motorcar,** and **whom appeared to have an (immigrant) accent,** and was **being too eloquent,** suddenly "become a threat", to the police. Or, whenever I see the police, I should act suspicious, or "yield", to rather "god-like" behavior. The few (situations) that I have seen, or heard being reported, doesn't even convince me, just now, that there will be any justice, in this material matter. As a resident of this great state, and great country, I asked the police to explain to me, where I went wrong. ***Officer Saroff became extremely irate, to the extent that I had to ask him to please calm down, be objective, and remain professional***. I was most shocked. As a consequence, the police team, after they were handed my documents (Driver's License, Motor Vehicle Registration, and Motor Vehicle Insurance), proceeded to their motor truck, without explanations to me, even when I sought explanations to the process, as Officer Saroff, told me that "he will be issuing a ticket to me". ***I remained seated in my Nissan motorcar, for close to fifteen(15) minutes***, as the police team still did not return to me. Ironically, I didn't see it as punishment, and thought that they were doing their due diligence. Would my race, or lack of an immigrant accent, have made it better for me?

Thereafter, the police team returned to my motorcar, each Police Officer approaching on the same side they did before, only that they were not holding unto their guns, in their respective holsters. My documents were returned to me, by Officer Saroff. I again reiterated that this is the first time that I am being stopped by the police, or being issued a traffic ticket, here in the United States. So, I asked the police team to give me a brief explanation, as to the process. ***Again, Officer Saroff began to become aggressive, and I became afraid, as he stepped back***, from  my window, not stopping to offer the appropriate information. **Interestingly, it was the female Police Officer, whom had to respectfully interject, "motioned to Officer Saroff" to calm down, and gently, professionally, and respectfully embarked on explaining a simple process to me**. This had to do with whether or not I agreed with the traffic ticket, the appeal process, and thereafter (nothing to do with my personal views, and other facts, now being expounded by me). It made so much difference. Amazing. Now, if I were to consequently form an opinion of the police, in general, after she spoke, then I would say, that not all have "evil" intentions, full of introverted egos, or whom may be harbouring malice, disdain, and prejudice.

I am respectfully ***requesting that the CCTV images be sought***, from private individuals, in this area- and I will list all of them. There were no presumed public (City installed) cameras in that area; my opinion. Now the CTV data, are as follows (places relative to intersection):

4/

EXH. 14

1) **GYRO HUT** (east Coney Island Avenue)- has one(1) camera focusing into the intersection. One(1) camera also focusing south, unto Coney island Avenue.

2) **PAK PHARMACY** (west Coney Island Avenue) - beside Gyro Hut, has one(1) camera focusing south, unto Coney Island Avenue.

3) **BARBER SHOP** (beside Pak Pharmacy) – has two(2) cameras, one(1) of which focused in general direction of intersection.

4) **PUNJAB GROCERY** (more south west, along Coney Island Avenue) - has one(1) cameras focusing into intersection, and one(1) other, where police stopped me.

5) **PHONE DOKTOR** (south Coney Island Avenue) - has two(2) cameras on external area of their building.

6) **FRY CHICKEN PIZZA** - has one(1) camera focusing more easterly, towards Foster Avenue, plus another, in that general vicinity.

Subsequently, _**I am appealing this outright malicious and self serving, egocentric, biased act, being meted out against me**_. Where are the principles of **equal opportunity**, **diversity**, **inclusiveness**, **non-discrimination**. The founding fathers had this in mind, despite. I hope that my highlights will show that hatred may still be in existence, and that particular personnel may be targeted. I have worked with police over thirty (30) years, in both operational (later, in my mid-ages), as well as information gathering, and dissemination, in my originating country. It looks so easy, that persons in position of authority, and responsibility, can easy "set up" persons, simply if they feel that they do not like them, or that the victim's  demeanour was not **subjugating**, even when the aggressor's  is **condescending**, **untrue** (no merit), and rather spiteful. Is this possible? However, affording personnel natural justice, eliminating bias, and avoidance of stereotyping, are crucial in obtaining genuine, meaningful, and effective results.

I pray that you will see the merit in my presentation, and that the truth will be uncovered, preventing _**"framing" of civilians**_, as I believe that the latter do (potentially) exist. _**Attached**_ for your perusal, is a _**detailed (**_hand drawn) _**map**_ of area, and happening. I have also attached a _**copy**_ of the requisite _**ticket**_.is _**attached**_. _**Eight(8)photographs of**_ the _**scene**_, are also attached. It is not expected that I will be "targeted", thereafter – retaliation.

Regards.

Yours sincerely

**ALROY D. RICHARDS**
**Driver/Complainant**

**Att.**

Copy – Deputy Inspector Mr. James Palumbo
       Commanding Officer, Police Precinct #070
       154 Lawrence Avenue, Brooklyn, NY 11230

5/





10/15/2018

(2)

POLICE
(TRUCK B)

N

W

My Motorcar
went south,
along
CeI Ave

Foster Av

TRUCK
A

EXH. 14



EXH. 14

POLICE
TRUCK
(B)



JEB 5810
10/15/2018

EXR 14

S ← E

My Motorcar
JEB 5810

(Police)
TRUCK B

Truck
A



10/15/2018

I got to pedestrian X'ing 1st and cleared area 1st

Truck B for a long time

Police (TRUCK B)

S

E

B 4315

Truck A

A

EXH. 14



EXH. 14





EXH. 14



EXH. 14

EXH. 14

# ABB1666862

**TRAFFIC TICKET**

POLICE AGENCY

LOCAL POLICE CODE

LAST NAME
FIRST NAME
M.I.

NUMBER & STREET ADDRESS

CITY
STATE
ZIP CODE

I.D. NUMBER

STATE

LICENSE EXPIRES (MM/DD/YY)

PLATE #

REG. STATE   VEH. TYPE   VEH. YR.

SEX   DATE OF BIRTH (MM/DD/YY)

REGISTRATION EXPIRES (MM/DD/YY)

OWNER IS LLC CLASS ID TYPE   APT. NO.   PHOTO I.D. SHOWN

VEH. MAKE   VEH. COLOR

TIME (24HOUR HH/MM)

DATE OF OFFENSE (MM/DD/YY)

**THE PERSON DESCRIBED ABOVE IS CHARGED AS FOLLOWS**

IN VIOLATION OF: (SECTION AND SUBDIVISION)

DESCRIPTION / NARRATIVE

PLACE OF OCCURRENCE

IN THE:   ○ City   ○ Town   ○ Village
OF:

COUNTY OF:

PRECINCT:

COMPLAINANT (SIGN) AND PRINT NAME/RANK

RADAR OPERATOR NAME (Print)

DATE APPROVED   ARREST   OFFICER ID #   OFFICER'S COMMAND

TRAFFIC VIOL. BUREAU IN:
Bronx - 696 East Fordham Road ·
TRAFFIC VIOLATIONS BUREAU HEARING OFFICES (718) 488-5710
Brooklyn, S. - 2875 W. 8th Street ·
Brooklyn, N. - Atlantic Ctr Mall (2nd Floor), 625 Atlantic Ave.·
Manhattan, N. - 2 Washington St. (9th Floor)·
Manhattan, S. - 159 East 125th Street (3rd Floor) ·
Business Hours:   Monday - Friday 8:30AM - 4:00PM
· Also Thursday 4:00PM - 6:00PM
Queens, N. - 30-56 Whitestone Expwy·
Queens, S. - 168-35 Rockaway Blvd.·
Rochester - 16 E. Main Street (6th Floor)
Staten Island - 1775 South Avenue·

YOU MUST ANSWER THIS TICKET WITHIN 15 DAYS OF
THE DATE OF OFFENSE. TO ANSWER ON-LINE AT
WWW.DMV.NY.GOV/EPLEAD.HTM OR BY MAIL, FOLLOW
THE INSTRUCTIONS ON THE OTHER SIDE.
FAILURE TO ANSWER WILL RESULT IN THE SUSPENSION OF
YOUR LICENSE AND A DEFAULT JUDGMENT AGAINST YOU.

MOTORIST COPY-TRAFFIC VIOLATIONS BUREAU

EXH. 14

**TO PLEAD GUILTY OR NOT GUILTY ONLINE**

You may plead guilty or not guilty and schedule a hearing online for most violations at www.dmv.ny.gov/eplead.htm.

**TO PLEAD GUILTY OR NOT GUILTY BY MAIL**

* Complete and SIGN the Plea Notice below. Mail within 15 days (with your payment if pleading guilty) to:

    TRAFFIC VIOLATIONS PLEA UNIT, P.O. BOX 2950-ESP, ALBANY, NY 12220-0950.

* Only credit cards, or checks or money orders payable to the Department of Motor Vehicles, are accepted.

* Tickets for equipment violations may only be dismissed if you mail a receipt for repair, showing that the repair was made, within one business day of the violation.

**PLEAD GUILTY IF YOUR CHARGE IS FAIR**

Fines could be higher if you plead NOT GUILTY and are then found GUILTY at hearing, or when appearing before a judge, even to plead guilty. The total amount includes the fine and all applicable surcharges and CANNOT be reduced.

### VIOLATIONS

| | | Speeding | Speeding at School Zone | Speeding in Work Zone |
|---|---|---|---|---|
| Seat Belt | $ 135 | | | |
| Cell Phone/Texting | $ 230 | 1-10 MPH over limit | $ 148 | $ 208 | $ 258 |
| Disobeyed Traffic Control Device | $ 135 | 11-30 MPH over limit | $ 203 | $ 318 | $ 358 |
| Equipment | $ 93 | | | | |
| Most other violations | $ 138 | 31+ MPH or more over limit, you must appear in person. | | | |

| | | | Unlicensed or Using Stared | | Uninspected Vehicle |
|---|---|---|---|---|---|
| Red Light Offenses within 18 months: | | 60 Days or Less | $ 153 | 60 Days or Less | $ 123 |
| | NYC | Rochester | Over 60 Days | $ 183 | Over 60 Days | $ 183 |
| 1st Offense | $ 278 | $ 183 | | | | |
| 2nd Offense | $ 453 | $ 270 | Bicycle Violations | | | |
| 3rd Offense | $ 1028 | $ 508 | NYC Bicycle Red light | $ 193 | | |
| | | | Bicycle Red Light (Rochester) | $ 85 | | |
| | | | Most Other Bicycle Violations | $ 50 | | |

**BICYCLE VIOLATIONS HAVE NO SURCHARGES OR POINTS.**

Included in the amount for each violation (except equipment and bicycle violations) are mandatory surcharges in the amount of $88. Equipment violations include mandatory surcharges in the amount of $58.

A guilty plea or conviction of a speeding violation of 21 MPH or more over the speed limit will add at least 6 points to your license and subject you to a Driver Responsibility Assessment.

NOTE:  You will be notified of a balance due if a particular violation requires a higher fine. If you owe additional fees, if the amount of your payment is insufficient or if you are required to appear in person.

### PLEA NOTICE

I, THE UNDERSIGNED, PLEAD:  ☐ GUILTY  ☐ NOT GUILTY.

If you are pleading GUILTY, it is the same as being found guilty by a judge. In either case, you may be required to pay a fine and, in addition, your driver license/privilege may be suspended or revoked as prescribed by law. If your guilty plea results in your having 6 or more points on your driver record for violations committed during an 18-month period, a Driver Responsibility Assessment will be imposed. For more information, visit our website at www.dmv.ny.gov. For some violations, you are required to appear in person even if you wish to plead guilty.

If you are pleading NOT GUILTY, you will be notified by mail of your hearing date, time and location.

YOUR TICKET WILL NOT BE RETURNED. PLEASE MAKE A COPY FOR YOUR RECORDS.

Print Name _____ Phone# _____

Signature of
Person Entering Plea _____ Date _____

NEW ADDRESS IF DIFFERENT FROM TICKET ADDRESS

Street _____

City _____ State _____ Zip Code _____

**TO PAY FINE WITH CREDIT CARD WHEN PLEADING GUILTY, FILL OUT INFORMATION BELOW**

Credit Card Number _____ Amount _____

Name As It
Appears On Card _____

Cardholder Signature _____ Expiration Date _____

UT-60 (10/15)

amNewYork

**NEWS**

# Legal Aid: Stop-and-frisk spiked 22% in 2019



**BY ROBERT POZARYCKI**
robert.pozarycki@amny.com

Despite legal challenges and a promise to end a controversial practice targeting people of color, the NYPD stopped-and-frisked more New Yorkers last year than it did in 2018, according to the Legal Aid Society.

The nonprofit legal defense agency reported on Monday a 22% spike in the NYPD's use of stop-and-frisk in 2019. Most of the stop-and-frisks occurred in Brooklyn, with 4,311 of the 13,459 citywide cases reported there.

While it had the fewest stop-and-frisks in the entire city with 514 in 2019, Staten Island had the largest increase in the procedure's use, 340 stop-and-frisks were recorded in 2018, accounting for a 51.2% spike in 2019.

The NYPD, however, disputed the Legal Aid Society report. A spokesperson claimed the spike is "unlikely to be a true increase in stops, but rather [a result of] more accurate and complete reporting" of them.

Over the last decade, stop-and-frisk came under legal challenges over allegations that officers improperly used the tactic, disproportionately stopping more people of color. A federal class action lawsuit led to a 2014 court ruling that found stop-and-frisk to be unconstitutional, forcing the NYPD to change its approach to policing.

The NYPD has worked to dramatically lower stop-and-frisk procedures across the city — going from 191,851 stops in 2013 to 11,008 stops in 2018. That's a 94.2% decrease over five years.

Even so, the Legal Aid Society said that stop-and-frisk usage increased in 2019 to 13,459 stops. Ninety percent of these cases involved people of color, the society claimed, and 65% of all stops resulted in neither arrest nor the issuance of a summons to the stopped individual.

"This data confirms what we hear from our clients on a daily basis — despite court rulings that the city's practices were unlawful, aggressive stop-and-frisk has made a comeback in New York City," said the Legal Aid Society's Corey Stoughton, who serves as attorney-in-charge of its special litigation unit with the criminal defense practice.

"What it really represents is a broken practice."

ise to New Yorkers who stood up years ago to end ineffective, unfair and unconstitutional police practices," Stoughton added

Detective Annette Shelton, an NYPD spokesperson, told amNewYork Metro in a statement that the department "has enhanced its auditing and compliance metrics as

well as developed training to address stops and proper reporting."

"The result is a better understanding of a very complex area of law, correction of common misunderstandings and better reporting," she added. The NYPD has dramatically reduced the use of stop-question-and-frisk from a high of 685,000 in 2011."

*New York City police officers demonstrate the stop-and-frisk tactic at a training facility at Rodman's Neck in the Bronx back in 2012.* FILE PHOTO/amNEWYORK METRO

Your new apartment has everything — great location,

03/30/2020
EXH 16

## Traffic Matters

| TICKET # | DATE | VIOLATIONS | RESULT | COMMENTS / MY RESPONSES |
|---|---|---|---|---|
| 8710616901 115.00 @ 7:20am 70th Precinct | 01/25/2019 Flatbush Ave & Beverly Rd. Brooklyn | No Standing | Found guilty (in absentia) | My 02/14/2019 letter to Dept. of Finance CC'd by ticket, plus photographs of scene attached). |
| Finance #'s: 075487 A 0449-0058A | 03/28/2018 02/21/2018 | → Speeding → Red light | Uncertain | My 07/19/2019 letter detailing the dispute of certain tickets- Didn't own car, now had those registration plates, neither was I driving. |
| 4472690-0 65.00 @ 12:30pm 70th Precinct 4472697-3 | 10/21/2018 1601 Beverly Rd Brooklyn 10/21/2018 | → Parking Receipt → Missing / Missing Registration Sticker | Found guilty (in absentia) / Withdrawn? (in absentia) | → Hearing request by me on 11/04/2018. → Had original in hand showing police went to get cleaner for windscreen, to attach. |
| 4472698-4 70th Precinct | 10/21/2018 | → Missing Inspection Sticker | Found guilty (in absentia) | |
| 868547165-5 65.00 @ 1:40am | 11/01/2018 E 19th Street Flatbush | → No Inspection Sticker | Found guilty (in absentia) | → Requested a Hearing on 11/04/2018- Two Tickets, same day, for same thing. |
| 868381744-6 65.00 @ 3:13pm 70th Precinct | 11/01/2018 2s236 6th St. Brooklyn | → No Inspection Sticker | Found guilty (in absentia) | Requested a Hearing on 11/04/2018- Two Tickets, same day, for same thing. |
| 45480 882-0 115.00 @ 8:06 70th Precinct | 06/11/2019 Albemarle Brooklyn | → No Standing | Vehicle impounded, taken to Brooklyn Navy Yard storage | Paid over $250.00 in order to retrieve the motor car. |