USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/18/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALROY RICHARDS,

                    Plaintiff,

        v.

CITY OF NEW YORK,

                    Defendant.

No. 20-CV-3348 (RA)(KNF)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

      Plaintiff Alroy Richards, proceeding *pro se*, brings this action against Defendant the City of New York ("the City") for violation of his rights under Title VII of the Civil Rights Act of 1964, and the First, Fourth, and Fourteenth Amendments of the United States Constitution. He principally alleges that the New York City Police Department ("NYPD") maliciously issued him numerous traffic tickets and moving violations resulting in the temporary suspension of his driver's license, and otherwise racially profiled and illegally surveilled him. As Plaintiff does not bring this suit against any individual defendants, the Court construes his claims as asserting municipal liability against the City, pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

      Before the Court is the motion to dismiss brought by the City. For the following reasons, that motion is granted.

## BACKGROUND

**I.      Factual Background**

The following facts alleged in the Amended Complaint ("Complaint") are assumed to be true for the purposes of this motion. *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

On March 9, 2018 Plaintiff reported to the NYPD that he had been physically attacked by a manager at his then-employer, an unnamed City agency. Compl. at 2, 9. Although Plaintiff identified his attacker to NYPD officers upon their arrival to the scene and the attack "took place under fully functional, fully operational Closed Circuit Television cameras," the perpetrator was never arrested. *Id.* at 2. Plaintiff made multiple follow-up visits and telephone calls to the NYPD's 1st Precinct and wrote to NYPD Headquarters, to no avail. *Id.* at 2-3. In April 2018, Plaintiff formally reported the matter to the Civilian Complaint Review Board, who referred him back to the NYPD. *Id.* at 3. Meanwhile, Plaintiff's employment had been terminated following the NYPD's visit to his workplace "for calling the police[] to the crime scene." *Id.*

After filing the March 2018 police report, "Plaintiff realized that the police began to follow him . . . in marked, as well as unmarked[,] police vehicles . . . . almost everywhere that Plaintiff goes." *Id.* He alleges that the police began intercepting and recording his emails, telephone calls, and other communications. *Id.* According to Plaintiff, persons identifying themselves as police have also turned up at his places of residence and employment to "discredit" him with "'disparaging' comments;" they have also followed him onto trains and buses to record him in public. *Id.* at 3, 6. "These negative campaigns[] against the Plaintiff led to severe emotional distress and other anxieties." *Id.* at 3. Plaintiff alleges that the police are "retaliat[ing] against him" "[d]ue to the fact that [he] had made these series of complaints, based on the March 9, 2018 Physical Attack against him." *Id.*

Plaintiff further asserts that the NYPD has on multiple occasions illegally stopped and ticketed him for traffic violations. For example, police officers stopped him in Brooklyn, NY, on October 15, 2018, and issued him a ticket for making a left turn without yielding to traffic. *Id.* at 4-5. Plaintiff detected "[e]lements of racism, and profiling . . . in the police's approach," and suspects that "illicit trackers" were placed on his car. *Id.* at 5. In response, Plaintiff wrote a five-page letter to the NYPD's 70th precinct explaining why the allegations against him were false. *Id.* at 6. Plaintiff also realized that multiple illegal traffic tickets were mailed to his address, and that "unusual" and "unfair" traffic tickets were placed on the windshield of his car. *Id.* In one instance, Plaintiff's car was removed from a street parking space to the Brooklyn Navy Yard, for allegedly parking in a "No Standing" zone, although other illegally parked cars were not towed. *Id.* at 8. Plaintiff asserts that "[v]ast inconsistencies exist" with respect to the enforcement of traffic laws. "A few of [those tickets] were thrown out by Administrative Law Judges." *Id.* at 7. Plaintiff's driver's license was suspended on October 29, 2019. *Id.* His driving privileges were restored on August 1, 2020. *Id.* at 20.

**II.     Procedural Background**

Plaintiff commenced this action on April 29, 2020, naming the City of New York Comptroller and the New York City Law Department as Defendants, and asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1983. On June 8, 2020, Defendants moved to dismiss the complaint on the grounds 1) that the named defendants are not suable entities and 2) that Plaintiff failed to state any cause of action upon which relief may be granted. Dkt. 11-12. On August 24, 2020 Plaintiff sent to a letter to the Court requesting leave to amend his complaint. Dkt. 23. Plaintiff filed an amended complaint (the "Complaint") on November 24, 2020, naming the City of New York as a defendant. Dkt. 27. The City filed the instant motion to dismiss on December 18, 2020. Dkt. 31.

The Complaint asserts that that members of NYPD violated Plaintiff's constitutional rights in a multitude of ways, including, but not limited to, surveillance abuses, abuse of legal powers, racial profiling, malicious prosecution, and retaliation. Plaintiff specifically alleges that these constitutional deprivations "resulted from defacto policies, or practices, custom, or tradition, or pattern of official practice." Compl. at 13. Plaintiff also claims that the City's actions caused him emotional distress, hair loss, intestinal disturbances, changes in sleep patterns and loss of "significant functions." *Id.* Lastly, the Complaint asserts that the NYPD violated Title VII through racial discrimination, and retaliation against Plaintiff for filing a lawful discrimination complaint. *Id.*

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id*.

## DISCUSSION

### I.   Whether Plaintiff States a *Monell* Claim

The Court construes the constitutional violations alleged in the Complaint as putative claims of municipal liability against the City pursuant to the *Monell* doctrine. Plaintiff does not name any individual state officials as a defendant nor identify any individuals who were "personally involved"

4

in the alleged deprivation of his constitutional rights. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The City is therefore the only cognizable defendant in this action.

Municipalities like the City cannot be held liable under § 1983 merely because they employ someone who violated the plaintiff's constitutional rights. *See, e.g., Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). "To hold a municipality liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (internal quotation marks and alterations omitted). In other words, a plaintiff must demonstrate that the municipality itself "'was the moving force behind the alleged injury.'" *Id.* (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)). Isolated acts by individual employees justify municipal liability only if "they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

Because Plaintiff does not plead facts to suggest that any identifiable practice of the City violated any cognizable constitutional right, his *Monell* claims must be dismissed. Even when interpreted to raise its strongest arguments, the Complaint fails to allege that any policy, pattern, or practice of the City resulted in a deprivation of Plaintiff's constitutional rights. This is so principally because Plaintiff's allegations do not state a claim for a violation of any constitutional right.

First, the allegations of wrongful ticketing and deprivation of driving privileges do not rise to the level of malicious prosecution, which requires pleading and proving "the initiation or continuation of a *criminal* proceeding" that terminated in Plaintiff's favor. *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (emphasis added) (internal quotation marks omitted). As any

sanctions issued against Plaintiff were civil in nature, they did not deprive him of any constitutional right.

Second, Plaintiff claims that the police began harassing him in retaliation for his complaints against the NYPD. The First Amendment prohibits government officials from taking retaliatory action against an individual for engaging in such protected speech. *See, e.g., Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). To prevail on such a claim, however, a Plaintiff must "establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id.* (quoting *Hartman v. Moore,* 547 U.S. 250, 259 (2006)). The Court finds that Plaintiff has failed to plausibly allege any connection between his complaints to police officials and the subsequent traffic tickets and stops. Indeed, Plaintiff provides a lawful explanation for each of his police encounters. For example, he acknowledges that he made an illegal left turn before the traffic stop of October 2018, and that his car was towed for being parked in a "No Standing" zone (although other cars purportedly park in "No Parking" zones with impunity). Compl. at 8-9. In short, the Complaint indicates that the NYPD interaction with Plaintiff "was not only compatible with, but indeed was more likely explained by, lawful . . . behavior." *Iqbal*, 556 U.S. at 680.

Lastly, Plaintiff asserts that the NYPD engaged in racial profiling, intimidation, and retaliation. He fails to state a claim for a violation of his rights under the Equal Protection Clause, however, because he alleges no facts to raise an inference that the NYPD was motivated by "discriminatory animus" or to suggest that a similarly situated non-minority group was treated differently, *Brown v. City of Oneonta, New York,* 221 F.3d 329, 337 (2d Cir. 2000). Absent such factual support, the Court cannot credit the conclusory allegations that the "circumstances, involving the Plaintiff, give rise to inferences of discrimination," Opp. at 5, or that the NYPD was harassing him "because of race, complaints made, color [and] nationality," Compl. at 3.

6

In sum, because Plaintiff has failed to adequately plead the deprivation of a constitutional right, his *Monell* claims must fail.

## II.     Title VII Claims

Plaintiff also brings claims under Title VII, which "outlawed discrimination in the workplace on the basis of race, color, religion, sex, or national origin." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737 (2020). Specifically, Title VII makes it "'unlawful ... for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Id.* at 1738 (quoting 42 U.S.C. § 2000e–2(a)(1)).

Plaintiff fails to state a discrimination claim under Title VII because he does not allege that his employer took any discriminatory action against him. To survive a motion to dismiss on such a claim, a plaintiff need only establish "a *prima facie* case of [] discrimination by demonstrating that (1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (internal quotation marks omitted). A retaliation claim similarly requires proof that a plaintiff participated in a protected activity—such as an act to oppose discrimination—and that he suffered an adverse employment action as a result. *See, e.g., Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020). The only allegations that concern Plaintiff's unspecified employer—that Plaintiff was physically attacked by his employer at a city agency and was terminated "for calling the police [] to [that] crime scene," Compl. at 6—do not satisfy the required elements of either claim. Because Plaintiff does not allege that he called the police to report or complain about any discriminatory practice, he has not adequately pled engagement in protected activity. *See, e.g., Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam). Absent

7

an allegation that Plaintiff engaged in some protected activity, or one from which the Court could infer a discriminatory motive on the part of his employer, Plaintiff fails to state a claim under Title VII.

### III. Purported State Law Claims

Plaintiff also appears to bring state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, retaliation, libel, and negligence.  Because the Court dismisses Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over his state claims.  Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  But a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (internal quotation marks omitted).

### IV. Leave to Amend

Plaintiff does not expressly seek leave to amend his Complaint if it is dismissed.  "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).  Moreover, "[a] *pro se* complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*,

720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks omitted).  The Court will thus permit Plaintiff to file an amended complaint if he has a good-faith basis to do so.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's first amended complaint is granted without prejudice to amend.  If Plaintiff chooses to file an amended complaint, he shall do so by no later than September 8, 2021.  Failure to file an amended complaint by that date will result in dismissal of this case with prejudice.

The Clerk of Court is respectfully directed to terminate the item at docket number 30.

SO ORDERED.

Dated:   August 18, 2021
         New York, New York

_____
Ronnie Abrams
United States District Judge