UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALROY RICHARDS,

                Plaintiff,

         v.

CITY OF NEW YORK, SCOTT STRINGER, *in his official capacity as City of New York comptroller,* J. PASTORIZA, and D. SAROFF,

                Defendants.

No. 20-CV-3348 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Alroy Richards, proceeding *pro se*, brings this action against the City of New York ("the City"), Scott Stringer in his official capacity as City Comptroller, and police officers "J. Pastoriza" and "D. Saroff" for violations of his rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, as well 18 U.S.C. §§ 241 and 242. Plaintiff's claims are based on two separate encounters with Police Officers Pastoriza and Saroff (the "Individual Defendants"), as well as his assertion that the New York City Police Department ("NYPD") issued him unjustified traffic tickets, suspended his license, and failed to follow up on his police reports. The City has filed a letter motion seeking for the Court to dismiss the Third Amended Complaint (the "Complaint") *sua sponte*.

    For the reasons that follow, Defendants' motion is granted, with the exception of Plaintiff's claim against Defendant Saroff for allegedly initiating a baseless traffic stop against him.

## BACKGROUND

**I.    Factual Background**

The facts alleged in this case have been detailed in the Court's prior opinion granting the motion to dismiss the First Amended Complaint. *Richards v. City of New York*, No. 20-CV-3348 (RA), 2021 WL 3668088, at *1 (S.D.N.Y. Aug. 18, 2021). The Court assumes the parties' familiarity with the allegations, and only includes those new to this Complaint and necessary to resolve the instant motion.

Plaintiff's claims against the Individual Defendants, Officers Pastoriza and Saroff, arise out of two separate incidents. First, Plaintiff alleges that Officer Pastoriza failed to follow up on a police report that Plaintiff made after he was assaulted by a manager at his then-employer on March 9, 2018. Compl. ¶ 2. Plaintiff asserts that he "pointed out" his assailant "to Police Officer Mr. J. Pastoriza," and filed a report "involving" Officer Pastoriza. *Id*. ¶¶ 2, 3. Plaintiff alleges that the report stated that the "suspect" would be prosecuted. *Id.* ¶ 4. According to Plaintiff, however, Defendant Pastoriza and the NYPD failed to properly pursue Plaintiff's claims. *Id*. ¶ 11.

As to Officer Saroff, Plaintiff alleges that on the morning of October 15, 2018, he was driving in Brooklyn when Defendant Saroff initiated an "illegal traffic stop" that resulted in a traffic ticket. Compl. at 3. According to Plaintiff, during this interaction, Defendant Saroff was "highly angry, without reason, was extremely verbally abusive, without reason, [and] was reaching for his gun, in his gun holdster [sic], as he approached Plaintiff" in his vehicle. *Id*. ¶ 21. Plaintiff was allegedly "filled with fear, and feared for his life." *Id*. Defendant Saroff took Plaintiff's license and registration during the fifteen-minute stop. *Id*. ¶ 33. According to Plaintiff, the baseless traffic stop imposed a "loss of freedom of action" amounting to "[a]rbitrary detention." *Id*. The ticket was ultimately dismissed. *Id*. ¶ 29.

The allegations against the City are primarily based on traffic penalties that Plaintiff received, purportedly without being afforded the opportunity to cross-examine City personnel. *Id.* ¶¶ 41–85. Plaintiff claims that he received at least five unjustified parking tickets, while other vehicles in a similar area were not towed or issued traffic tickets even though their owners purportedly violated traffic laws. *Id.* ¶ 46. He also says he received tickets for "impossible, and non-existent speeding, and redlight […] violations." *Id.* ¶ 43. Plaintiff asserts that his license was then suspended on October 29, 2019, resulting in "diminished economic and social status" because he was unable to use his vehicle while employed as a parking attendant driver. *Id.* ¶¶ 68, 85. Plaintiff's vehicle registration was also suspended for nearly a year beginning in July 2019, which similarly resulted in a loss of economic and social status. *Id.* ¶¶ 57, 65. Finally, Plaintiff alleges that he was the victim of an attempted assault in a Stop & Shop in Brooklyn, and that the NYPD failed to investigate the incident after Plaintiff reported it, though he does not identify any individual defendant with respect to those allegations. *Id.* ¶¶ 86–94. The Court assumes all the facts alleged in the Complaint to be true. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

**II.   Procedural Background**

Plaintiff commenced this action against the City of New York on April 29, 2020, asserting claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, and filed his First Amended Complaint on November 24, 2020. Dkt. 27. The Court dismissed the First Amended Complaint, finding that Plaintiff failed to state a claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), but granted Plaintiff leave to amend. Dkt. 41. Plaintiff filed a Second Amended Complaint on September 9, 2021. Dkt. 42. On September 21, 2021, Defendants filed a letter motion seeking for the Court to dismiss the Second Amended Complaint *sua sponte*,

or, in the alternative, schedule a conference to discuss the filing of another motion to dismiss. Dkt. 46. At the October 18, 2021 conference, the Court granted Plaintiff leave to file a Third Amended Complaint. Dkt. 49.

On December 14, 2021, Plaintiff filed the operative Complaint, naming the Individual Defendants for the first time. Dkt. 55. On February 8, 2022, the City again requested that the Court dismiss Plaintiff's Complaint *sua sponte*, though the Individual Defendants had not yet retained counsel. Dkt. 76. The following day, Plaintiff filed his opposition to dismissal. Dkt. 77. On March 11, 2022, after Corporation Counsel appeared on behalf of Officers Pastoriza and Saroff, the Court informed the parties that it would treat the City's renewed request for dismissal as having been submitted on behalf of all Defendants. Dkt. 89.

## STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] Courts "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). This is especially true when the plaintiff alleges civil rights violations. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

4

**DISCUSSION**

Plaintiff alleges a number of civil rights violations against the Individual Defendants and against the City (and Defendant Stringer), including claims for violations of due process and the Equal Protection Clause of the Fourteenth Amendment, as well as allegations relating to unlawful searches and seizures. The Court construes Plaintiff's allegations of constitutional violations as asserting claims under 42 U.S.C. § 1983. Additionally, in accordance with the liberal pleading standards afforded *pro se* plaintiffs and reading Plaintiff's allegations to raise the strongest claims they suggest, the Court will consider Plaintiff's "due process" allegations as sounding under either the Equal Protection Clause of the Fourteenth Amendment or the Fourth Amendment. *See e.g., Dowling v. Venable*, No. 21-CV-5281 (LTS), 2021 WL 3193033, at *3 (S.D.N.Y. July 26, 2021) (interpreting *pro se* plaintiff's pleadings to assert claims under the Fourteenth Amendment); *Singleton v. City of New York*, No. 21-CV-2893 (LTS), 2022 WL 524669, at *4 (S.D.N.Y. Feb. 22, 2022) (construing allegations as falling under the Fourth Amendment).

**I.    Plaintiff Fails to State a Claim Against Defendant Pastoriza**

Plaintiff's constitutional and statutory claims against Defendant Pastoriza are premised on Pastroiza's alleged failure to properly investigate and pursue Plaintiff's claims that he was assaulted by his former employer. Those claims must be dismissed.

As courts in the Second Circuit have repeatedly held, "[t]here is no … constitutional right to an investigation by government officials." *Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014); *see Harrington v. Cnty. of Suffolk,* 607 F.3d 31, 35–36 (2d Cir.2010); *Lopez v. City of New York*, 186 F. Supp. 3d 304, 312 (S.D.N.Y. 2016) (concluding that plaintiff failed to demonstrate likelihood of success on claims against NYPD officers for failure to investigate complaints in the absence of evidence that similarly-situated

individuals were provided preferential treatment). "[T]he duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion" that precludes any claim of entitlement to a police investigation. *Harrington*, 607 F.3d at 35 (2d Cir. 2010) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005)). Although the Constitution does not confer a right to an investigation into possible criminal acts, the Equal Protection Clause of the Fourteenth Amendment does prohibit selective enforcement based on impermissible considerations. *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995). In order to establish an equal protection violation, a plaintiff bringing a selective enforcement claim must show that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations," such as race or religion, or by malicious intent to injure the person. *Id.*

Plaintiff asserts that the NYPD, "including Officer Pastoriza," "inadequately assessed" his report, and that "proper proceedings did not appeared [sic] to have been pursued" against his former employer after he was assaulted. Compl. ¶¶ 10–11. While those facts, if true, may indicate a frustrating failure of the authorities to follow up on Plaintiff's report, they do not constitute a constitutional violation. Plaintiff does not allege that the NYPD or Defendant Pastoriza "selectively den[ied] … protective services to certain disfavored minorities." *White v. City of New York*, 206 F. Supp. 3d 920, 931 (S.D.N.Y. 2016) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989). Nor is there any indication in the Complaint that Officer Pastoriza declined to investigate Plaintiff's report because of his race or religion, or out of any malicious intent—or that he treated Plaintiff's report differently than similar reports made by other complainants.

According to Plaintiff, as a result of Officer Pastoriza's failure to investigate, he "suffered unlawful deprivations … such as freedom of movement guaranteed by [the] 4th Amendment, to be free from seizure of [his] person," namely, by his alleged assailant at the company where he worked. Compl. ¶ 11. But the Fourth Amendment's protection against unreasonable searches and seizures applies to "governmental action," not to actions "by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Plaintiff has alleged no "nexus between the State and the challenged action" such that "the action of the [entity]"—here, Plaintiff's assailant—"may be fairly treated as that of the State itself." *United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008). His Fourth Amendment claim must therefore be dismissed.

Plaintiff's claim that Officer Pastoriza's failure to investigate his police report violates 18 U.S.C. §§ 241 and 242 also fails. Those sections establish criminal liability, not civil liability, for deprivations of civil rights, and do not give rise to any express or implied private causes of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir.1994); *Guttilla v. City of New York*, No. 14-CV-156 (JPO), 2015 WL 437405, at *11 (S.D.N.Y. Feb. 3, 2015). Because "the decision to prosecute is solely within the discretion of the prosecutor," Plaintiff cannot commence a criminal prosecution against Officer Pastoriza in this action. *Williams v. Brill*, No. 22-CV-7619 (LTS), 2022 WL 4467654, at *2 (S.D.N.Y. Sept. 26, 2022) (quoting *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981)).

II. **Plaintiff States a Fourth Amendment Claim Against Defendant Saroff, But Fails to State an Equal Protection Claim**

Plaintiff's due process and equal protection claims against Defendant Saroff arise out of a traffic stop in October 2018 that culminated in him receiving a ticket. His due process claim against

Defendant Saroff survives insofar as it can be construed as alleging a violation of the Fourth Amendment, while his equal protection claim is dismissed.

Plaintiff does not expressly plead a Fourth Amendment claim against Defendant Saroff. Construed liberally, however, his "due process" claims for damages and allegations of "arbitrary detention" against Officer Saroff related to the traffic stop sound under the Fourth Amendment's prohibition against unreasonable searches and seizures. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Traffic stops must therefore satisfy the Fourth Amendment's reasonableness limitation, which "requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009).

Here, Plaintiff alleges that he was unjustifiably stopped due to Officer Saroff's "untrue, and malicious allegations, of failure to yield to right turn/turn at intersection." Compl. ¶ 23. He asserts that the "allegations" leveled against him were "[d]efinitely not true, as evidences showed," *id*., attaching a letter he submitted to the New York State Department of Motor Vehicles that describes the incident that led to the stop in detail. Although Plaintiff's letter is difficult to follow, he appears to assert that he purposely paused at the intersection and waited for pedestrians to cross before turning. Ex. 14 (noting that he "waited to fully turn" and that he "approached with caution" after "positioning [his] motorcar … at the centre of the intersection"). Taking Plaintiff's *pro se*

8

allegations as true, as the Court must—and given that he not only claims that Officer Saroff's assertions were "untrue," but also asserts that he did, in fact, yield upon turning—Plaintiff has adequately alleged that Officer Saroff did not have a reasonable suspicion to stop his car. *See Conti v. Comito*, No. 2:21-CV-158 (RPK) (AYS), 2022 WL 4485155, at *3 (E.D.N.Y. Sept. 27, 2022) (finding that Plaintiff plausibly stated claim for unlawful traffic stop where he alleged that "[a]t no point in time did [he] commit any observable crime or violation of the law"); *Di Pompo v. Mendelson*, No. 21-CV-1340 (CS), 2022 WL 463317, at *2 (S.D.N.Y. Feb. 15, 2022) *modified on other grounds by* 2022 WL 1093500, at *5 (S.D.N.Y. Apr. 7, 2022) ("Plaintiff denies having run the stop sign, so he plausibly asserts the absence of reasonable suspicion or probable cause."); *c.f. Johnson El v. Bird*, No. 19-CV-5102 (CS), 2020 WL 5124920, at *5 (S.D.N.Y. Aug. 31, 2020) (dismissing claim for alleged unconstitutional traffic stop because Plaintiff "allege[d] no facts from which [the Court could] infer that [the officer] lacked reasonable suspicion to stop him"). Although there is no indication that the traffic stop was "longer than [was] necessary to effectuate [the] purpose" of the stop, *United States v. Gomez*, 877 F.3d 76, 88 (2d Cir. 2017) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)), insofar as Plaintiff alleges a Fourth Amendment violation against Officer Saroff for pulling over his car without reasonable suspicion, that claim may proceed.[2]

Plaintiff's equal protection claim, by contrast, cannot survive. In order to state a claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him or her on the basis of their status as a member of a protected

---

[2] The Court notes, however, that the fact that Plaintiff's ticket was later dismissed does not necessarily support his assertion at summary judgment or trial that Officer Saroff lacked reasonable suspicion to stop his car. *See, e.g., Stewart*, 551 F.3d at 193 (noting that "the constitutional validity of a stop is not undermined simply because the officers who made the stop were mistaken about the relevant facts"); *Hawthorne*, 92 F. Supp. 3d at 296 (finding that the dismissal of traffic tickets on procedural grounds did not automatically support the plaintiff's Fourth Amendment claim).

9

category. *See Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000); *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). A plaintiff may point to a law or policy that "expressly classifies persons on the basis of race," or may identify a facially neutral law that has either been applied in an intentionally discriminatory manner, or that has an adverse effect and was motivated by discriminatory animus. *Brown*, 221 F.3d at 337.

Plaintiff alleges that Defendant Saroff stopped him for fifteen minutes while taking his license and registration and was "angry" and "verbally abusive," Compl. ¶ 21, and further asserts that he falls into a "protected status," *id*. ¶ 34. Plaintiff fails to allege, however, any facts that raise an inference that Officer Saroff was motivated by discriminatory animus, or identify which "protected status" he belongs to. Nor does the Complaint include any facts to suggest that any similarly situated individual not a member of a protected class was treated differently. *See Lopez v. City of New York*, 186 F. Supp. 3d 304, 313 (S.D.N.Y. 2016) (dismissing equal protection claims against NYPD for failure to investigate where plaintiff failed to allege that she was treated differently than similarly situated individuals). Nothing in the Complaint suggests that Plaintiff was stopped because of any protected status, or that the stop was carried out in a discriminatory manner.

### III. Plaintiff Fails to State a Claim against the City and Comptroller Scott Stringer

Plaintiff's Equal Protection Clause claim against the City must be dismissed for substantially the same reasons as those described in the Court's August 18, 2021 order dismissing the First Amended Complaint. "To hold a municipality liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. City of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020). Plaintiff's Complaint does not

cure the shortcomings of his earlier complaints because he does not allege that the City intentionally discriminated against him on the basis of his status as a member of a protected category. *Brown*, 221 F.3d at 337. While he poses the question as to "whether [the] incident[s] [in the Complaint are] isolated … or a pattern, of omissions, inactions, or 'mistakes' where the Plaintiff is concerned," his factual allegations fail to support an answer in the affirmative. Compl. ¶¶ 59, 76. As in the First Amended Complaint, Plaintiff does not point to any official policy or custom that denied him equal protection of the laws, and instead relies on individual incidents that do not suggest discriminatory animus—specifically, his numerous traffic tickets and the suspension of his license and vehicle registration for his failure to maintain liability insurance coverage. Compl. ¶¶ 41–85, Ex. 64.

Plaintiff's due process claims against the City are also without merit. Plaintiff alleges that "no hearings [were] held" to review his parking tickets and that he was not "informed of evidence against him," nor "afforded any opportunities to examine any such evidence[], if any, nor to cross examine" any City personnel. *Id.* ¶ 41. But courts have repeatedly affirmed that the City's parking ticket system, combined with New York's Article 78 procedures, "provide[s] parking violators … with more than sufficient process to satisfy the Constitution." *Rackley v. City of New York*, 186 F. Supp. 2d 466, 480 (S.D.N.Y. 2002); *see also Nestle Waters N. Am., Inc. v. City of New York*, No. 15-CV-05189 (ALC), 2016 WL 3080722, at *8 (S.D.N.Y. May 25, 2016), *aff'd*, 689 F. App'x 87 (2d Cir. 2017). Plaintiff has alleged no "departure from [this] constitutionally more than sufficient process." *Tsinberg v. City of New York*, No. 20-CV-749 (PAE), 2021 WL 1146942, at *5 (S.D.N.Y. Mar. 25, 2021). Indeed, Plaintiff alleged in the First Amended Complaint that he successfully challenged several of his tickets in court which were "thrown out by [a]dministrative [l]aw [j]udges," First Amended Compl. at 7, and at least one of

the exhibits attached to the Complaint indicates that a hearing date was scheduled for at least one of his traffic violations, Compl. Ex. 2. *See, e.g., Kelly v. Rice*, 375 F. Supp. 2d 203, 210 (S.D.N.Y. 2005) (dismissing due process challenge over erroneous ticketing where Plaintiff "fought the ticket in traffic court" and won). Because the City's "administrative parking violations system, together with the judicial system of the State of New York, provided plaintiff with adequate pre-deprivation remedies, adequate post-deprivation remedies, and sufficient notice that such remedies were available," Plaintiff fails to state a claim for a due process violation. *Rackley*, 186 F. Supp. 2d at 482.

Lastly, Plaintiff names former Comptroller Scott Stringer as a defendant. Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself and are subject to a *Monell* analysis. *See Hafer v. Melo,* 502 U.S. 21, 25, (1991); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) Plaintiff's claims against Mr. Stringer thus fail for the same reasons as his claims against the City.

## CONCLUSION

For the foregoing reasons, Plaintiff's Third Amended Complaint is dismissed in its entirety, with the sole exception of his claim against Defendant Saroff for allegedly pulling him over without reasonable suspicion. The Court will hold a telephonic conference on June 7, 2023 at 12:00 p.m. to discuss next steps in this action. The parties shall use the following dial-in information to call in to the conference: Call-in Number: (888) 363-4749; Access Code: 1015508. This conference line is open to the public. If that time is inconvenient for the parties, they may make an application to the Court by letter requesting that the conference be rescheduled.

SO ORDERED.

Dated:     May 30, 2023
           New York, New York

_____
Ronnie Abrams
United States District Judge